511 P.2d 145

William O. OLSEN and Iva L. Olsen, his wife, Plaintiffs and Appellants,

v.

PARK DAUGHTERS INVESTMENT COMPANY, Roy E. Park, et al., Defendants and Respondents.

No. 13075.

Supreme Court of Utah.

June 11, 1973.

Jackson Howard of Howard & Lewis, Provo, Harry D. Pugsley of Pugsley, Hayes, Watkiss, Campbell & Cowley, Salt Lake City, for plaintiffs and appellants.

V. Pershing Nelson of Aldrich, Bullock & Nelson, Provo, for defendants and respondents.

CROCKETT, Justice:

This case involves a dispute over the boundary, and ownership of a strip of land between the properties of the plaintiffs Olsen, lying on the east side of the Provo River, and of the defendants Park opposite on the west side of the river, in the area which has been referred to as "the river bottoms," west of Provo. The defendants rely upon an ancient deed (1883), and by acquiescence since that time, in the river as the boundary; whereas, the plaintiffs claim the disputed area through metes and bounds straight line description, which overlaps on the west side of the river. Upon a plenary trial the court found the issues in favor of the defendants, rejecting plaintiffs' contention, and, as between these parties, quieted title in the defendants to the disputed strip of land. Plaintiffs appeal.

In analyzing the plaintiffs' attack upon the findings and judgment it is appropriate to have in mind these basic propositions: In order for them to prevail, plaintiffs had the burden of proof to establish their case, and to persuade the trial court; and particularly in this action to quiet title, this had to be done on the strength of their own title, and not because of any weakness in that of the defendants.[1] Further, the trial court having refused to be so persuaded, this court on appeal would not upset his findings and judgment, and order findings and judgment to the contrary, unless the evidence were such that all reasonable minds must necessarily so find; and in making that determination, we review the evidence and all reasonable inferences fairly to be drawn therefrom in the light favorable to his findings and judgment.

The tracts owned by plaintiffs and defendants were part of a larger tract originally patented to Brigham Shurtliff. On March 10, 1883, he conveyed a tract of 80 acres west of the river to defendants' predecessor, David S. Park. That deed described the easterly boundary as the middle of the Provo River. Three years later, August 7, 1886, Shurtliff conveyed an 80-

1. Babcock v. Dangerfield, 98 Utah 10, 94 P.2d 862 (1939); Mercur Coalition Mining Company v. Cannon, 112 Utah 13, 184 P.2d 341 (1947); Smith v. De-Niro, 26 Utah 2d 153, 486 P.2d 1036 (1971).

acre tract on the opposite (east) side of the river to plaintiffs' predecessor. But instead of using the river as the western boundary, the deed described the tract by metes and bounds:

> Commencing at the Southeast corner of the North half of the Southeast quarter of Section 13, in Township 6 South, Range 2 East of the Salt Lake Meridian; thence West 22.50 chains; *thence North 7¼ degrees East 40.33 chains;* thence East 18.50 chains; thence South 40.00 chains to place of beginning. Area 80 acres.

Following the exact call of the later deed, (as emphasized) the straight-line west boundary does not follow the river, which goosenecks easterly and back. Thus the straight-line call overlaps on the north and south ends of the tract and so purports to convey part of the property Shurtliff had previously conveyed to Park by the 1883 deed.

There is an incidental fact, stressed by the plaintiffs, that the next deed in the defendants' chain of title, from David S. Park to his son Roy Park in 1918, uses a tax notice metes and bounds description, instead of the Provo River, as the east boundary. (While there still would be some overlap, this line is different than that relied upon by the plaintiffs.) However, it is important to note that the deed to Roy Park did not divest the Parks of the property they had previously acquired up to the Provo River. Further, it made no conveyance which would redound to the benefit or interest of the plaintiffs; and much more importantly, it had no effect whatsoever upon the controlling fact in this case; that the defendants (and predecessors) had been in open, notorious, and continuous occupation of the property up to the river for many years. (The trial court's finding recited more than 50 years.) There is testimony from several witnesses that the Parks had so occupied their property up to a barbed wire fence which had existed along the west bank of the river since time immemorial; and that no one else ever did so, or made any claim to it, and this includes the plaintiffs and their predecessors. It was on those facts that the trial court rejected plaintiffs' claim to the ownership of the land and ruled in favor of the defendants on the basis of boundary by acquiescence.[2]

Plaintiffs place reliance on the Marketable Record Title Act, Chapter 109, Laws of Utah 1963, now included in our code as Sections 57–9–1 et seq. through 57–9–10. Section 57–9–1 states:

> Any person . . . who has an unbroken chain of title of record . . . for forty years or more, shall be deemed to have a marketable record title . . .

---

2. For a clear and succinct statement of the elements essential to boundary by acqui-

escence see *Fuoco v. Williams*, 18 Utah 2d 282, 421 P.2d 944 (1966).

as defined in Section 57–9–8, subject only to the matters stated in Section 57–9–2 . . .

Section 57–9–8 states:

As used in this act: (1) The words "marketable record title" mean a title of record as indicated in Section 57–9–1, which operates to extinguish such interests and claims, existing prior to the root of title.

Plaintiffs argue that they have had record title to the disputed land since their 1886 deed and that the effect of the statutes just quoted is to "extinguish . . . claims existing prior to the root of title," i. e., the defendant's 1883 deed.

Consideration of plaintiffs argument and the applicability of the quoted statutes as an attack upon the findings and judgment of the trial court renders it desirable to reflect upon some foundational principles applicable to disputes in the ownership of land. A primary one is that the peace and good order of society require that there be stability not only in record land titles, but more importantly, in the ownership and occupation of lands. It is for this reason that it has seemed sound policy that boundary lines which have been long established and accepted by those who should be concerned should be left undisturbed in order to leave at rest matters which may have resulted in controversy and litigation, wherefore there has developed the doctrine of boundary by acquiescence.[3] Its essence is that where there arises a dispute as to the boundary between properties, and it appears that there is a recognizable physical boundary of any character, which has been acquiesced in as a boundary for a long period of time,[4] the conflict should be conclusively presumed to have been reconciled in some manner. It is our opinion that the policy of encouraging peace and good order and of discouraging trouble and controversy demands that that be accepted as the correct doctrine, and that it need not depend upon rationalization as to ideas of estoppel, presumed agreements, lost grants or other fictional concepts.[5]

The plaintiffs' argument presents a confrontation between the doctrine of boundary by acquiescence as just discussed, which we regard as a foundational one relating to rights based on actual possession of land, and the provisions of the Marketable Record Title Act which, as its title indicates, is concerned with matters of record. That Act has the same purpose of

3. Johnson v. Sessions, 25 Utah 2d 133, 477 P.2d 788 (1970); Holmes v. Judge, 31 Utah 269, 87 P. 1009 (1906).

4. See Johnson v. Sessions, footnote 3 above, and concurring comment by Justice Henriod.

5. Cf. 3 Utah L.Rev. 504 (1953) and authorities therein cited.

encouraging repose and discouraging controversy by providing for the elimination of ancient defects in title. These two doctrines should be so applied as to reconcile rather than to conflict with each other, and thus to effectuate their common purpose of repose above stated. In considering the entire Marketable Record Title Act in the light of that purpose we see nothing therein indicating any intent to repudiate or supersede the doctrine of boundary by acquiescence which is based on the actual possession of land. On the other hand, certain expressions in the Act indicate the propriety of giving preference the rights of persons in actual possession of property. Section 57–9–2(2) excepts from the operation of the Act interests in land based upon possession by the owner continuously for a period of 40 years, and refers to Section 57–9–4. The latter likewise recognizes the possession of land for a long period (40 years or more) as being deemed equivalent to the filing of a notice of a claim of interest in the land to interrupt the 40-year period of quiet record title provided by the statute. This is in conformity with the well-established general rule of law that any claimant is charged with notice of the rights of persons in actual possession of real property.[6]

Based upon what we have said herein, it is our conclusion that the Mar-

ketable Record Title Act does not apply to defeat the more fundamental boundary by acquiescence established in the defendants. Accordingly, the court was justified in rejecting plaintiffs' claim to the property west of the Provo River.

Affirmed. Costs to defendants (respondents).

CALLISTER, C. J., and HENRIOD, ELLETT and TUCKETT, JJ., concur.

6. See Salt Lake, Garfield & Western Railway Co. v. Allied Materials Co., 4 Utah 2d 218, 291 P.2d 883 (1955).