Robert J. WRIGHT and Rosemarie Wright, his wife, Plaintiffs and Respondents,

v.

Richard L. CLISSOLD et al., Defendants and Appellants.

No. 13431.

Supreme Court of Utah.

May 1, 1974.

---

William G. Gibbs, of Clyde, Mecham & Pratt, Salt Lake City, for defendants and appellants.

Carvel R. Shaffer, Salt Lake City, for plaintiffs and respondents.

CALLISTER, Chief Justice:

Plaintiffs initiated this action to quiet title to a parcel of land near Snyderville, Utah. Plaintiffs were record owners of approximately eight acres of land, and defendants were record owners of approximately 440 acres. Included within plaintiffs record title is an area of approximately 2¼ acres to which defendants have asserted a claim under the doctrine of boundary by acquiescence. The matter was submitted to a jury upon special interrogatories, and the trial court made findings of fact in accordance with the answers of the jury and rendered judgment for the plaintiffs. Defendants appeal therefrom.

Plaintiffs purchased their property in 1962; their vendor, Mr. Hanley, indicated that the boundary was approximately 250 feet north of a fence line that ran in a generally east-west direction. Mr. Hanley had purchased the property in the 1940's; both he and the plaintiffs have always paid the taxes on this 2¼ acres situated north of the fence.

Defendants purchased their property in 1960 from Mr. Loertscher, who informed defendants that the adjoining landowner, Mr. Hanley, had served notification that the fence was not situated on the boundary. Defendants' deed does not include this disputed area and neither they nor their predecessors in interest have paid taxes thereon.

Mr. Loertscher testified that he became familiar with the property in 1930 and at that time the fence appeared old; it was constructed of three barbed wires strung on aspen posts. He testified that north of the fence the area was cultivated, i. e., a crop of hay was planted. South of the fence there was sage brush, willows, and other brush. The fence was for the purpose of holding cattle; the cattle foraged after the hay was cut; the fence prevented the cattle from wandering into a bog south of the fence. The witness testified that both the plaintiffs' and defendants' land was originally owned by the Peterson family, when he first became familiar with the fence. The Petersons had mortgaged 80 acres of their northern parcel to one Mr. Powers. Powers foreclosed on the mort-

gage and took possession of the land; he continued planting hay up to the fence. Mr. Loertscher leased the land from Mr. Powers in 1944 and purchased it from him in 1946. Mr. Loertscher testified that he had assumed the fence marked the southern boundary of his property and cultivated the entire area. He testified that it was approximately in 1948 that Mr. Hanley informed him that the fence was not on the boundary. He offered to purchase the area from Hanley, who responded that he had to have his own ground. Subsequently, no one interfered with the cultivation of the area up to the fence. Mr. Loertscher admitted that he had never had any conversation or made any agreement with anyone that the fence was the boundary.

Witness, Ivers, testified that in approximately 1962 he had a conversation with Mr. Loertscher who informed Ivers that he did not own all of the meadow, but Mr. Hanley had given him permission to hay it. Mr. Loertscher denied the conversation and stated that he had conveyed the property to defendants at the time of the alleged discussion.[1]

The trial court found that a visible and distinguishable fence line had been in existence for more than twenty years prior to the filing of this action in 1968. The defendants and their predecessors had occupied and made use of the property north of the fence line during this period. The plaintiffs and their predecessors had occupied and made use of the property to the south but not to the north of the fence line during this period. The parties and their predecessors in interest neither treated the fence line as a boundary nor did they acquiesce in said fence as the boundary between the parties. Based on the foregoing the trial court quieted title to the property in the plaintiffs.

On appeal, defendants contend that although the parties or their predecessors had knowledge that the fence was not the boundary, their failure to do anything about it for a long period of time established the fence as a boundary by acquiescence. Defendants urge that in this type of case where the parties passively accept the fence line as the boundary for a requisite period of time, the parties need not have a necessary mental intent that the boundary be the fence line. Defendants assert that the sole issue is whether both parties must "intend" the fence line to be the boundary. If the action of the parties overcomes passive intent, the defendants should prevail. If a passive intent is determinative, the plaintiffs should prevail according to defendants.

▮▮▮▮ In Fuoco v. Williams [2] this court stated that there were four prerequisites to establish a *presumption* of boundary by acquiescence: (1) occupation up to a visible line marked by monuments, fences or buildings, (2) mutual acquiescence in the line as the boundary, (3) for a long period of years, (4) by adjoining landowners. Once these elements are established, the court is required to presume the existence of a binding agreement unless the party who assails it proves by competent evidence that there actually was no agreement between the adjoining landowners or there could not have been a proper agreement. Facts which prove the latter include the following: (1) no parties available to make an agreement, e. g., sole ownership of the property with the existing line which was later transferred in tracts to two or more other persons; (2) the line was set for a purpose other than setting a boundary; (3) the absence of a dispute or uncertainty in fixing the boundary, and (4) possibly mistake or inadvertence in locating the boundary on facts that would warrant relief in equity.[3]

▮▮▮▮ In the instant case, defendants urge that the failure of plaintiffs and their

1. Mr. Loertscher, after the sale, became a partner of the defendants and operated the farm until 1965.

2. 18 Utah 2d 282, 284, 421 P.2d 944 (1966).

3. King v. Fronk, 14 Utah 2d 135, 138–139, 378 P.2d 893 (1963); Ringwood v. Bradford, 2 Utah 2d 119, 123, 269 P.2d 1053 (1954).

predecessors in interest to take affirmative action concerning the property north of the fence constitutes mutual acquiescence in the fence as the boundary, regardless of any actual knowledge by the parties that the fence was not the boundary.

In order to establish a boundary by acquiescence; it is not necessary that the acquiescence should be manifested by a conventional agreement, but recognition and acquiescence must be mutual, and both parties must have knowledge of the existence of a line as boundary line.[4]

■ The doctrine of boundary by acquiescence cannot be invoked in the instant action, since there was evidence that clearly implied that the fence was not built pursuant to an agreement between adjoining landowners. The evidence indicated that the fence was constructed to control cattle and not to locate a boundary which was in doubt or uncertain. In fact, the evidence indicated that the person building the fence situated it upon his own land, and there was no neighbor to consult. The testimony indicated that as early as 1948 Mr. Loertscher was informed by the adjoining owner that the fence was not the boundary, and he conveyed this information to his vendees, the defendants. The evidence of the physiography of the area was consistent with the testimony that Mr. Hanley granted Mr. Loertscher permission to hay this 2¼ acre strip, which was separated from the remainder of the property of Hanley by uncultivatable ground. In view of the evidence adduced at the trial, there was no basis to imply that the fence was built pursuant to an agreement between adjoining owners. As this court observed in Ringwood v. Bradford,[5] to hold that a defendant's belief, reliance, and occupation up to the fence line, without more, were controlling in a boundary dispute would be to ignore the statutory guides for adverse possession, since defendant had not paid taxes on that portion of the land which he claimed.

The judgment of the trial court is affirmed. Costs are awarded to plaintiffs.

HENRIOD, ELLETT and TUCKETT, JJ., concur.

CROCKETT, Justice (concurring):

I thing there is merit to the defendants' contention that the mere failure to do anything about a fence dividing properties over a long period of years constitutes acquiescence; and that this can be true without any showing of actual knowledge or intent. Nevertheless, in this case there is a reasonable basis in the evidence to support the view taken by the trial court that this fence was never established or intended as a boundary; and that this is sufficient to overcome the presumption that would normally arise from the existence of a fence between adjoining properties for so long a period of years.

---

4. Fuoco v. Williams, note 2, supra, at 286 of 18 Utah 2d, at 947 of 421 P.2d.

5. Note 3, supra.