Royden V. CARTER, Plaintiff and Appellee,

v.

Shirley HANRATH; Magdalene Stevens; Randy Carter; and O.B. Carter, Defendants and Appellant.

No. 930554–CA.

Court of Appeals of Utah.

Nov. 7, 1994.

Frederick N. Green and Julie V. Lund, Salt Lake City, for appellant.

Brant H. Wall and Cory R. Wall, Salt Lake City, for appellee.

Before BENCH, DAVIS and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Defendant Shirley Hanrath appeals the trial court's decision awarding a disputed area of land to an adjoining land owner, plaintiff Royden V. Carter, based on the legal doctrine of boundary by acquiescence. We affirm.

## BACKGROUND

This case concerns a dispute over ownership of a portion of land situated between two parcels about eighteen miles northwest of Duchesne, Utah. The 160–acre northern parcel was purchased by Barbara Shrader (Shrader) in 1961. About 80 percent of the parcel is located on a plateau above and to the north of the Duchesne River, while about 20 percent is at the base of the cliff and apparently "landlocked," inaccessible from the portion sitting atop the plateau. Nonetheless, Shrader testified that she always

believed she owned the portion below the plateau although she had visited the disputed portion only once in the mid–1970s by accessing it from the south.

Royden V. Carter and his brother, O.B. Carter, purchased the parcel south of the Shrader land in 1964 from Pete F. Abplanalp, who had owned the property for thirty years. The Carters did not have the property surveyed, but instead made the purchase based on representations from Abplanalp and a visual inspection, which disclosed the parcel to be essentially rectangular, bounded by fences on the east and west and by a state highway on the south. The Carters were told the northern boundary was marked by "ledges" or "cliffs," which rise perpendicularly from their land to form a natural barrier. In 1969, O.B. Carter quitclaimed his interest in the property to his brother, Royden Carter (Carter).

The dispute began when Shrader was negotiating to sell her parcel to defendant, Shirley Hanrath (Hanrath). Before purchasing the land, Hanrath ordered a survey which disclosed that Carter was occupying land below the cliffs and within the surveyed boundaries of the Shrader parcel. Nonetheless, Hanrath purchased the Shrader property on August 23, 1986.

When it became clear Hanrath intended to assert ownership of the disputed area at the base of the cliffs, Carter filed suit in September 1989, seeking to quiet title in the land below the cliffs. A bench trial was held and, on November 30, 1992, the trial court issued a memorandum decision, quieting title to the disputed portion in Carter on the basis of boundary by acquiescence. In its findings of fact issued March 23, 1993, the trial court found that the east and west boundaries to the Carter parcel were marked by fences that extended northward from the state highway to the cliffs. The trial court further found that the fences actually attached to the cliffs, thus forming a roughly rectangular parcel. The trial court also found that Carter or his predecessors in interest had occupied the land since 1920, and that Carter or his predecessors had constructed a barn and other structures on the disputed area for use in farming and grazing. Thus, the trial court

determined that Carter's occupation and use of the land would have been apparent to Shrader if she had visually inspected the property before purchasing it.

Based on those findings of fact, the trial court held Shrader's "indolence" in failing to inspect the property and asserting ownership constituted acquiescence to the boundary. Accordingly, the trial court found that when Shrader sold the parcel to Hanrath, she could convey only the land within the modified boundaries. Hanrath appeals.

## ISSUES ON APPEAL

Defendant raises essentially two issues on appeal:

(1) Did the trial court err in finding sufficient evidence of occupation of the disputed area to justify awarding the land to Carter based on boundary by acquiescence?

(2) Did the trial court err in imputing acquiescence to Shrader who, as a non-resident landowner, was unaware of Carter's occupation of the land?

## STANDARD OF REVIEW

■■■ " '[I]n equity cases appeal may be had on the facts as well as the law.' " *Englert v. Zane*, 848 P.2d 165, 168 (Utah App. 1993) (quoting *Parks Enters., Inc. v. New Century Realty, Inc.*, 652 P.2d 918, 920 (Utah 1982)). Findings of fact may be reversed only if clearly erroneous. Utah R.Civ.P. 52(a); *Reid v. Mutual of Omaha Ins. Co.*, 776 P.2d 896, 899 (Utah 1989); *Englert*, 848 P.2d at 168. A finding is clearly erroneous if it is "against the great weight of evidence or if the court is otherwise definitely and firmly convinced that a mistake has been made." *Bountiful v. Riley*, 784 P.2d 1174, 1175 (Utah 1989). The appeals court considers the trial court's opportunity " 'to judge the credibility of the witnesses.' " *Reid*, 776 P.2d at 899 (quoting Utah R.Civ.P. 52(a)); *Grayson Roper Ltd. v. Finlinson*, 782 P.2d 467, 470 (Utah 1989). By contrast, the appeals court reviews the trial court's legal conclusions for correctness, granting no particular deference. *Bellon v. Malnar*, 808 P.2d 1089, 1092

(Utah 1991); *Grayson Roper Ltd.*, 782 P.2d at 470.

## ANALYSIS

### Boundary by Acquiescence

The trial court held that the disputed portion of land should be quieted in Carter under the doctrine of boundary by acquiescence. Under this doctrine, property rights are determined based on actual possession of land. *Olsen v. Park Daughters Inv. Co.*, 29 Utah 2d 421, 511 P.2d 145, 147 (1973). The elements of boundary by acquiescence are: (1) occupation up to a visible line marked by monuments, fences or buildings; (2) mutual acquiescence to the line as a boundary; (3) for a long period of time, generally not less than 20 years; (4) by adjoining landowners. *Staker v. Ainsworth*, 785 P.2d 417, 420 (Utah 1990);[1] *Englert v. Zane*, 848 P.2d 165, 168 (Utah App.1993). Once each element is established, the party seeking title by acquiescence is entitled to a presumption of ownership. *Englert*, 848 P.2d at 169; *Fuoco v. Williams*, 18 Utah 2d 282, 421 P.2d 944, 946 (1966).

Hanrath concedes the third and fourth elements—that Carter is an adjoining landowner who has lived on the property for more than 20 years. Hanrath, however, argues that Carter cannot meet the first two requirements—occupation to a visible line and mutual acquiescence. We consider each of these arguments in turn.

### I. Occupation

To establish the element of occupation to a visible line, a party must first prove "normal and appropriate" use of the disputed parcel. *Englert v. Zane*, 848 P.2d 165, 170 (Utah App.1993) (trial court did not abuse its discretion in finding that gardening, recreation and relaxation constitutes occupation); *see also Brown v. Milliner*, 120 Utah 16, 232 P.2d 202, 207 (Utah 1951) (pasturing was the land's "only practical use"); *Staker v. Ainsworth*, 785 P.2d at 420 (occupation established through building and occupying houses, farming, irrigating and keeping livestock

upon the disputed area). Secondly, a party must prove the occupation extended to a visible line, and the line must be "open to observation" and "definite, certain and not speculative." *Englert*, 848 P.2d at 169 (quoting *Fuoco v. Williams*, 18 Utah 2d 282, 421 P.2d 944, 946 (1966)).

The trial court found that Carter and his predecessors in interest had, since 1920, occupied the disputed parcel by raising livestock, cultivating and harvesting crops, and by maintaining and using fences, a barn and a stock yard for hay. The trial transcript provides ample support for this finding. Carter testified that the disputed land was used for growing hay, pasturing animals and calving. Neighbors testified that this was basically the way the land had been used for many years. Weldon Brown, a neighbor whose uncle, Pete Abplanalp, sold the property to Carter, testified that he (Brown) helped his uncle grow crops on the disputed portion more than 45 years ago. He also recalled a barn and a feed yard located in the disputed portion. Delbert Broadhead, an 82–year–old Duchesne County resident who owns the land east of Carter, also testified that the two previous owners of Carter's land used it for farming and grazing over a period of more than 60 years. This testimony was essentially uncontroverted; even Shrader admitted seeing cattle grazing on the disputed parcel during her brief "walk through" in the mid–1970s.

The trial court also found that the fences marking the east and west boundaries to the Carter parcel extended north from the state highway to the cliffs on the north. In fact, the trial court found that the fences attached to the first tier of the cliffs and that the cliffs were "natural monuments and barriers." Once again, the trial transcript provides a more than adequate basis for these findings. Carter testified that the fences extended from the road to the cliffs when he purchased the property, and that portions of the fences crossing the river were repaired each spring after high water washed them out. Carter also testified that the cliffs formed a natural

---

1. *Staker* eliminated an additional element of "objective uncertainty" delineated in *Halladay v.* *Cluff*, 685 P.2d 500, 505 (Utah 1984). *Staker v. Ainsworth*, 785 P.2d 417, 425 (Utah 1990).

barrier to contain cattle, and that he always regarded the cliffs as the boundary to his property.[2] Broadhead testified that the fencelines extending from the highway to the cliffs had been there as long as he could remember. He also testified that he recalled mending the portions of the fences that extended across the river after they washed out each spring from heavy runoff. Additionally, Brown testified that the fences had "always been there."

It is clear that Carter met the element of occupation up to a visible line. The use of the disputed land for farming and grazing is normal and appropriate. Moreover, the fences and cliffs constitute a visible line around Carter's property that is "open to observation ... definite, certain and not speculative." *Fuoco*, 421 P.2d at 946.

## II. Acquiescence

Hanrath argues that the trial court erred in finding that Hanrath's predecessor in interest, Barbara Shrader, had acquiesced to Carter's occupation of the property. The trial court held that Shrader and her husband "had a duty to visually inspect what was there to be seen, and their failure to do so carried imputed acquiescence from their predecessors who could have seen the fences and the total enclosure to the cliffs north of the river." Hanrath argues this holding is without precedent and erroneous because acquiescence requires actual knowledge of the disputed boundary and its visible marker. Hanrath points out that Shrader, who purchased the property in 1961, visited the property only once in 25 years. Moreover, Shrader testified that she did not notice anyone else occupying the disputed area during that visit.

Although Utah case law has not definitively addressed this particular point, we conclude that actual knowledge of the fence or monument marking the disputed boundary line is not a prerequisite in boundary-by-acquiescence cases. Some Utah cases suggest that acquiescence requires knowledge of the boundary. *See, e.g., Wright v. Clissold*, 521 P.2d 1224, 1227 (Utah 1974) (" '[B]oth parties must have knowledge of the existence of a line as boundary line' " (quoting *Fuoco v. Williams*, 18 Utah 2d 282, 421 P.2d 944, 947 (1966))).[3] *Wright*, however, is readily distinguishable from the facts in this case. Clearly, the knowledge at issue in *Wright* was not knowledge of the fence's existence, but rather of its *status as boundary*. Because the evidence showed that neither party treated the fence as the actual boundary, there could be no knowledge of or acquiescence to the line as a boundary line.[4] Thus, *Wright* does not support Hanrath's argument.[5]

2. During oral argument, counsel for defendant raised the issue of whether the cliffs constitute an adequate monument or barrier for boundary by acquiescence. Because this argument was not briefed, we need not address it. We note, however, that the Utah Supreme Court has held that a boundary may be "a recognizable physical boundary of *any* character, which has been acquiesced in as a boundary for a long period of time." *Olsen v. Park Daughters Inv. Co.*, 29 Utah 2d 421, 511 P.2d 145, 147 (1973) (emphasis added). In this case, by running the fences to and attaching them to the cliffs, the natural boundary formed by the cliffs was, in effect, incorporated as the boundary of the disputed area.

3. Generally, knowledge is not an issue in boundary by acquiescence cases, mainly because the boundaries are usually marked by fences (*Staker v. Ainsworth*, 785 P.2d 417 (Utah 1990)), a river (*Englert v. Zane*, 848 P.2d 165 (Utah App.1993)), by encroaching structures (*Homer v. Smith*, 866 P.2d 622 (Utah App.1993) *cert. denied*, 878 P.2d 1154 (Utah 1994)), or by some other hard-to-miss monument.

4. The *Fuoco* case is equally inapposite. In that case, the court reversed a finding of boundary by acquiescence where the boundary in question was a two-foot wide irrigation ditch that had to be frequently replowed and cleared. *Fuoco*, 421 P.2d at 946. The ditch, the court found, was not sufficiently definite and certain to constitute a monument. *Id.; see also Universal Inv. Corp. v. Kingsbury*, 26 Utah 2d 35, 484 P.2d 173, 174 (1971) (a boundary line must be open, visible and marked by monuments, fences or buildings and recognized as a boundary).

5. Hanrath also cites dicta in *Wright* in support of her contention that Shrader did not acquiesce because Shrader and Carter never agreed to the cliffs as the boundary between their parcels. The *Wright* case states that "[t]he doctrine of boundary by acquiescence cannot be invoked in the instant action, since there was evidence that clearly implied that the fence was not built pursuant to an agreement between adjoining landowners." *Wright*, 521 P.2d at 1227. Despite this dicta, it is clear that boundary by acquiescence and boundary by agreement are separate

The Utah Supreme Court has stated that "'[a]cquiescence' is more nearly synonymous with 'indolence,' or 'consent by silence,'—or a knowledge that a fence or other monuments appears to be a boundary,—but that no one did anything about it." *Lane v. Walker,* 29 Utah 2d 119, 505 P.2d 1199, 1200 (1973). This accords with the dictionary definition of acquiescence as "[p]assive compliance or satisfaction ... [c]onduct from which assent may be reasonably inferred.... Equivalent to assent inferred from silence with knowledge or from encouragement, and presupposes knowledge and assent." Black's Law Dictionary 24 (6th ed. 1990).

▮ Thus, according to the *Lane* court, a landowner may acquiesce to a boundary through "indolence."[6] And while "indolence" has no agreed-upon legal definition, it is generally defined as "laziness or inactivity arising from a love of ease or aversion to work; indisposition to labor." Webster's Third New International Dictionary 1154 (1986). Therefore, landowners may acquiesce to a boundary through idleness or laziness. In other words, a landowner whose property has been encroached upon acquiesces to the boundary when he or she "either had or *should have had* knowledge that his [or her] property was being claimed by another." *Riter v. Cayias,* 19 Utah 2d 358, 431 P.2d 788, 789 (Utah 1967) (emphasis added). *See also Piotrowski v. Parks,* 39 Wash.App. 37, 691 P.2d 591, 594 (1984), *review denied,* 103 Wash.2d 1031 (1985) (a purchaser who fails to detect an open and obvious fenceline because he did not inspect property before purchase cannot later object); *see also Luck v. Welch,* 243 S.W.2d 589, 591–92 (Tex.Ct.App.1951) (purchaser who did not inspect land and failed to discover clearly designated and marked roadway

cannot, after the fact, complain of the encroachment).

▮ Moreover, our holding that acquiescence may be imputed from long-term indolence is consistent with the policy upon which boundary by acquiescence is based, namely

> "that the peace and good order of society require that there be stability ... in the ownership and occupation of lands.... [B]oundary lines which have been long established and accepted by those who should be concerned should be left undisturbed in order to leave at rest matters which may have resulted in controversy and litigation."

James H. Backman, *The Law of Practical Location of Boundaries and the Need for an Adverse Possession Remedy,* 1986 B.Y.U.L.Rev. 957, 965 (1986) (quoting *Olsen v. Park Daughters Inv. Co.,* 29 Utah 2d 421, 425, 511 P.2d 145, 147 (1973)).

Clearly, Shrader was indolent with respect to her property. Any visual inspection of the land would have disclosed Carter's presence. Carter's use of the land included cultivation of crops, grazing of cattle as well as the presence of structures such as a barn, stock yard and fences. Thus, we conclude that Shrader's acquiescence may be imputed from her indolence in failing to inspect the property. Accordingly, when she sold the land to Hanrath, she could convey only that land within the boundaries to which she had acquiesced.

## CONCLUSION

The trial court did not err in awarding the disputed area to Carter based on boundary by acquiescence. Because Shrader, Hanrath's predecessor in interest, did not adequately inspect her land during the 25 years she owned it, she was unaware of Carter's

---

doctrines, each springing from distinctive conceptual roots. Boundary by agreement is based on the law of contracts and thus requires actual agreement supported by consideration. By contrast, boundary by acquiescence is akin to prescription and requires no actual agreement. *See* James H. Backman, *The Law of Practical Location of Boundaries and the Need for an Adverse Possession Remedy,* 1986 B.Y.U.L.Rev. 957, 962–67 (1986). Thus, Hanrath's reliance on *Wright* is misplaced.

6. Hanrath argues that allowing acquiescence through passive "indolence" is unfair to the out-of-state landowner because it places a duty on the landowner to inspect his or her property. We note that such a duty would also prevent an absentee landowner from thwarting the purpose of the boundary by acquiescence doctrine simply by never being around.

occupation and use of the disputed area. Shrader's "indolence" with regard to her property constitutes acquiescence to Carter's occupation and use of the land below the cliffs. Thus, Shrader's conveyance to Hanrath could only include the land atop the plateau.

We affirm.

BENCH and DAVIS, JJ., concur.