2014 UT App 151

**Terral E. ANDERSON, Plaintiff and Appellant,**

v.

**Janet FAUTIN, Defendant and Appellee.**

**No. 20120972–CA.**

Court of Appeals of Utah.

June 26, 2014.

Marcus Taylor, for Appellant.

Tex R. Olsen, for Appellee.

Judge STEPHEN L. ROTH authored this Opinion, in which Judge GREGORY K. ORME and Senior Judge RUSSELL W. BENCH concurred.[1]

Opinion

ROTH, Judge:

¶1 This boundary dispute case raises a single issue concerning the application of the doctrine of boundary by acquiescence: must the claimant show active use of the land on both sides of a disputed boundary to satisfy the occupation element of the doctrine? The plaintiff purchased property in Piute County in 1968 and did not use it or visit it for more than two decades. The defendant owns adjacent property to the north where for more than twenty years she and prior owners had farmed and grazed livestock. In 2005, the plaintiff surveyed his land and then filed a quiet title action asserting his ownership of a narrow strip of land on the defendant's side of a 2,000–foot fence. The district court granted summary judgment in the defendant's favor, holding that the plaintiff's silence was evidence that the parties had long acquiesced in the fence line as a boundary and rejecting the plaintiff's argument that his failure to occupy his parcel was fatal to the defendant's boundary by acquiescence claim. We affirm and conclude that a land-

owner seeking to establish a boundary by acquiescence need only demonstrate that she has actively used the land up to the disputed boundary and need not show that the adjacent landowner has done the same.

BACKGROUND

¶2 Terral Anderson purchased a piece of real property in Piute County, Utah, in 1968.[2] He left the property vacant and did not visit it (at least the portion along his northern boundary) for more than twenty-six years, until he retired in 1994. Janet Fautin purchased property north of Anderson's land in 1987. A 2,000–foot fence originally constructed in 1930 separates Fautin's property from Anderson's land and one other parcel.

¶3 About ten years after he retired, Anderson paid for a professional survey of his property. The survey revealed that the existing fence was 123 feet south of Anderson's north boundary line. Anderson filed a quiet title action in 2007 asking the court to recognize the survey as the correct boundary and to order Fautin to move the fence. In her answer, Fautin asserted that she had acquired the disputed land under the doctrine of boundary by acquiescence: the fence had "been established by acquiescence" as the "boundary for a period of substantially more than 20 years," and therefore Anderson could no longer complain that the fence line was not the correct boundary.

¶4 The parties filed cross-motions for summary judgment. Anderson argued that because he "was an absentee owner," "never used his land, and had no interaction with Fautin and her predecessors," he did not occupy his property or acquiesce in the boundary established by the fence line, and Fautin therefore could not establish a boundary by acquiescence. In response, Fautin argued that "parties relying on a fixed boundary and occupying land up to that boundary do not have the ... obligation of showing activity on the other side of the

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

2. "In reviewing the district court's grant of summary judgment, we recite the facts in the light most favorable to" the nonmoving party, Anderson. *See Ross v. Epic Eng'g, PC*, 2013 UT App 136, ¶ 2, 307 P.3d 576.

boundary fence." She also maintained that an owner's "indolence or silence" was not a valid defense to boundary by acquiescence.

¶ 5 The district court ruled in Fautin's favor. It held that Anderson's "level of activity with respect to the properties [was] immaterial" because Fautin's "active use of the disputed area satisfies the occupancy requirement in establishing a boundary by acquiescence." Moreover, the court noted, Anderson "either knew or should have known [Fautin] was using the disputed area up to the fence line," but he "never objected." The court concluded that Anderson's "silence, indolence, and failure to inspect his property constitute[d] a mutual acquiescence in the disputed boundary line." Anderson appeals.

ISSUE AND STANDARD OF REVIEW

¶ 6 Summary judgment is appropriate only where there are no genuine issues of material fact and "the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). Anderson does not claim that there were unresolved issues of fact. Rather, he argues that the district court's summary judgment ruling was incorrect because the district court "misread the law" when it held that Fautin's "active use of the disputed area satisfies the occupancy requirement in establishing a boundary by acquiescence." "We review a district court's grant of summary judgment for correctness." *Torian v. Craig*, 2012 UT 63, ¶ 13, 289 P.3d 479.

ANALYSIS

█ ¶ 7 The doctrine of boundary by acquiescence allows a land owner to establish a property line that differs from the legal description of his property by satisfying four elements: "(i) occupation up to a visible line marked by monuments, fences, or buildings, (ii) mutual acquiescence in the line as a boundary, (iii) for a long period of time, … (iv) by adjoining landowners." *Ault v. Holden*, 2002 UT 33, ¶ 16, 44 P.3d 781 (citation and internal quotation marks omitted). The long-period-of-time element has been defined by our case law as "at least twenty consecutive years." *Id.* ¶ 23. The central issue on appeal is whether Anderson's inactivity on his side of the boundary is material to the

occupation requirement. The district court held that it was not, concluding that Fautin's "active use of the disputed area" by itself "satisfie[d] the occupancy requirement in establishing a boundary by acquiescence."

¶ 8 Anderson argues that "it is the conduct of both adjoining landowners that creates the boundary line, not one acting unilaterally." In other words, he maintains, the occupation element "requires occupation of their respective parcels by both of the adjoining landowners," and "activity on only one side of the disputed boundary" is not enough. (Internal quotation marks omitted.) In response, Fautin argues that Anderson cannot use his "[s]ilence or inactivity … as a defense." We conclude that Fautin's use of the property up to the fence line satisfies the occupation element.

¶ 9 There do not appear to be any Utah cases that have directly addressed whether there must be active use of the property on both sides of a disputed boundary to satisfy the occupancy element of boundary by acquiescence. The district court concluded that Fautin's "active use of the disputed area satisfies the occupancy requirement" and held that Anderson's "level of activity" was "immaterial" to the issue. In its analysis, the court relied heavily on our decision in *Carter v. Hanrath* (*Carter I*), 885 P.2d 801 (Utah Ct.App.1994), and a Utah Supreme Court opinion that reversed it, *see Carter v. Hanrath* (*Carter II*), 925 P.2d 960 (Utah 1996).

¶ 10 But those cases, while helpful to an analysis of mutual acquiescence, fail to shed much light on whether occupation to the boundary line by both owners is required to fulfill the first element. In *Carter I*, a rancher grazed his cattle at the base of a plateau owned by his neighbor. 885 P.2d at 802–03. Even though the neighbor could not access the disputed area from her property on the plateau and had visited it just once, we held that the rancher's use alone had satisfied the occupation element of boundary by acquiescence. *Id.* at 802–05. We affirmed the trial court's decision granting title to the rancher, concluding that the other three elements of boundary by acquiescence had also been sat-

isfied. *Id.* at 806–07. The Utah Supreme Court reversed, holding that because the neighbor was unable "to take physical possession of the disputed area," her inactivity on that portion of her land could not "be construed to be acquiescence." *Carter II,* 925 P.2d at 962. The supreme court did not address our analysis of the other three elements of boundary by acquiescence, including our conclusion that the occupation requirement had been satisfied despite the neighbor's inactivity. *Id.* And because the absence of "any one of the four elements is fatal" to a boundary by acquiescence claim, *Goodman v. Wilkinson,* 629 P.2d 447, 448 (Utah 1981), we cannot construe the supreme court's silence as tacit approval of any conclusion in our own decision that was unnecessary to the supreme court's ultimate resolution of the case. Thus, *Carter I* and *Carter II* do not resolve Anderson's contention that both owners must actively occupy their land up to a boundary.

¶ 11 Other than the *Carter* cases, the parties have not identified any Utah case law that directly addresses the question presented here. But we believe for three reasons that Utah law does not require active occupation by both owners to establish a boundary by acquiescence. First, in every Utah case we have examined where the parties' central dispute was the occupancy requirement, courts have focused exclusively on the use of the disputed property by the claiming party. Second, to the extent the opposing owner's land use has been discussed in the case law, it seems to have been analyzed as evidence of mutual acquiescence, not occupancy. Finally, focusing the occupancy analysis on the claiming party's land use is consistent with the policy considerations underlying the boundary by acquiescence doctrine.

¶ 12 In cases where the occupation element has been at issue, Utah courts have largely ignored the opposing landowner's use of his own property abutting the disputed boundary line. Thus, the supreme court has held that the occupation element is satisfied when "a particular occupation up to a visible line would place a reasonable party on notice that the given line was being treated as a boundary between the properties." *Bahr v. Imus,* 2011 UT 19, ¶ 36, 250 P.3d 56 (internal quotation marks omitted). And our cases have deemed uses like farming, raising livestock, irrigation, or residence, *see id.*—uses "normal and appropriate for the character and location of the land," *see Englert v. Zane,* 848 P.2d 165, 170 (Utah Ct.App.1993)-to be among the types of occupation that provide such notice to the opposing party. For example, in *Englert,* we affirmed a trial court's decision establishing a boundary by acquiescence where the claiming parties used their property for "gardening, recreation, and relaxation." *Id.* Our analysis focused on whether a natural boundary (a river) and the claiming party's use of the disputed parcel for gardening and recreation was enough to satisfy the occupation requirement, and we then determined that the occupation element was met without discussing the character of the opposing party's land use. *Id.* at 168–70. Similarly, in *LPM Corp. v. Smith,* we held that allegations in the claiming party's complaint that it had "continuously occupied and used the disputed parcel for farming, livestock grazing," and travel up to a wire fence were enough to survive dismissal on the occupancy element. 2006 UT App 258, ¶¶ 4, 10, 16–17, 139 P.3d 292. We did not discuss the opposing owner's land use. *Id.*

¶ 13 These cases are not aberrations; Utah appellate courts appear to have consistently followed this approach in boundary by acquiescence cases. *See, e.g., Ault v. Holden,* 2002 UT 33, ¶ 17, 44 P.3d 781 ("In this case, [occupation] has been established with respect to the strip because the parties do not dispute that the [claiming party] ha[s] occupied and used the strip up to the fence."); *Fuoco v. Williams,* 15 Utah 2d 156, 389 P.2d 143, 145 (1964) (noting that the occupation element was not an issue because the parties conceded that the claiming party "had occupied the land up to [a] ditch for a long period of years"); *King v. Fronk,* 14 Utah 2d 135, 378 P.2d 893, 894–95 (1963) (holding that the claiming party produced sufficient evidence of occupation to meet the requirement of boundary by acquiescence without discussing the opposing owner's land use), *overruled on other grounds by Halladay v. Cluff,* 685 P.2d 500 (Utah 1984); *Johnson Real Estate Co. v. Nielson,* 10 Utah 2d 380, 353 P.2d 918, 919–

20 (1960) (holding that the trial court's factual finding that the claiming party "had full and exclusive possession" of the disputed property adequately supported a boundary by acquiescence ruling without discussing the opposing owner's land use); *Dean v. Kang Sik Park*, 2012 UT App 349, ¶¶ 30–31, 293 P.3d 388 (concluding that the occupation element was not satisfied because the claiming owners had "not pointed us to any compelling record evidence that they used the [d]isputed [a]rea in any significant way or that their actions could reasonably have been expected to put the [other parties] or their predecessors on notice that the wooden fence was being treated as a boundary between the lots"); *see also* David A. Thomas & James H. Backman, *Utah Real Property Law* § 13.05(b)(7)(ii), at 431 nn. 490–91 (Lexis-Nexis 2013) (collecting Utah boundary by acquiescence cases).

¶ 14 Further, to the extent the opposing owner's land use has been discussed in boundary by acquiescence cases, it seems to have been considered as evidence of mutual acquiescence, not occupancy. Indeed, Utah courts routinely examine "various landowner actions as evidence of acquiescence," including "[o]ccupation up to, but never over" a recognized physical boundary. *RHN Corp. v. Veibell*, 2004 UT 60, ¶ 25, 96 P.3d 935. In *RHN Corp.*, the Utah Supreme Court concluded that a family acquiesced in a fence as the northern boundary of their neighbor's land because they "farmed up to the fence line since 1938, ... never occupied the land south of the fence," and "never objected to the fence line as the boundary." *Id.* ¶ 27. Likewise, in *Essential Botanical Farms, LC v. Kay*, the supreme court affirmed a trial

court's ruling that two owners mutually acquiesced in a fence as a boundary between their properties because "both families farmed their respective properties and allowed their cattle to graze up to, but never over the fence for nearly half a century." 2011 UT 71, ¶ 30, 270 P.3d 430 (internal quotation marks omitted). And in *Martin v. Lauder*, we reversed a summary judgment that rejected a boundary by acquiescence claim, concluding that there was an issue of fact because the claiming party disputed that the opposing owners had "continued to access, maintain, and use the [d]isputed [p]roperty beyond the fence after the fence was built." 2010 UT App 216, ¶¶ 9, 13, 17, 239 P.3d 519. Without discussing the occupancy element, we noted that the dispute about the opposing owners' property use was material to whether the opposing owners and their predecessors had "acquiesce[d] in the fence as a boundary line." *Id.* ¶¶ 9, 13.[3]

¶ 15 We acknowledge that a handful of cases contain language implying that land use on both sides of a disputed boundary is pertinent to the occupation requirement. *See Orton v. Carter*, 970 P.2d 1254, 1257 (Utah 1998); *Staker v. Ainsworth*, 785 P.2d 417, 420 (Utah 1990); *Harding v. Allen*, 10 Utah 2d 370, 353 P.2d 911, 913 (1960), *overruled on other grounds by Wood v. Myrup*, 681 P.2d 1255 (Utah 1984); *Pitt v. Taron*, 2009 UT App 113, ¶ 2, 210 P.3d 962. But a closer reading of each case demonstrates that none of them is inconsistent with a rule that requires active land use by only the claiming party to satisfy the occupation element. In *Pitt*, we upheld the district court's conclusion that the occupation element was not satisfied, noting that "the property own-

---

3. *See also Staker v. Ainsworth*, 785 P.2d 417, 420–21 (Utah 1990) (noting the fact that "[o]wners occupied houses, constructed buildings, farmed, irrigated, and raised livestock only within their respective fenced areas" as evidence of mutual acquiescence); *Williams v. Oldroyd*, 581 P.2d 561, 563 (Utah 1978) (concluding that the opposing party did not acquiesce in a boundary because he "used the disputed property on several occasions" and the claiming party "twice offered to purchase it"); *Smith v. Security Inv. Ltd.*, 2009 UT App 355, ¶¶ 7–8, 223 P.3d 451 (concluding that evidence showing that the opposing party "made no use whatsoever of the disputed parcel and never objected to the [claim-

ing party's] use of the disputed parcel ... readily support[ed] the trial court's conclusion" of mutual acquiescence); *Brown v. Jorgensen*, 2006 UT App 168, ¶¶ 13, 17–18, 136 P.3d 1252 (affirming the trial court's determination that an opposing owner did not acquiesce in a fence line as a boundary and citing evidence that both owners "ran livestock on the land" and "grazed cattle" as support for the trial court's conclusion that the fence was a cattle barrier, not a boundary (internal quotation marks omitted)); *Mason v. Loveless*, 2001 UT App 145, ¶ 21, 24 P.3d 997 (noting the fact that "herds were run on both sides of a fence" supported a conclusion of mutual acquiescence).

ers did not continuously occupy their respective portions of land up to the fence line as a boundary." 2009 UT App 113, ¶ 2, 210 P.3d 962. Our decision, however, did not hinge on the nature of either owner's land use. Rather, our concern centered on the permanency of the boundary in light of evidence that the fence between the two properties "was never ... permanent" and had been "moved around to accommodate" the needs of one owner's livestock. *Id.* As we have discussed, the occupation element requires not just land use, but "occupation up to a visible line marked by monuments, fences, or buildings." *Ault*, 2002 UT 33, ¶ 16, 44 P.3d 781 (citation and internal quotation marks omitted). The shifting nature of the relevant boundary in *Pitt* was fatal to a finding of occupation independent of the parties' land use. Consequently, to the extent *Pitt* could be read as requiring active use by both owners to establish occupation up to a boundary, it is inconsistent with the way Utah courts have generally approached the issue, *see supra* ¶¶ 12–13, and the pertinent language appears to have been unnecessary to the result and therefore dicta.

¶ 16 Likewise, in *Staker*, the Utah Supreme Court noted that the occupation element was satisfied in a boundary by acquiescence case involving multiple parties because "[h]ouses were built and land occupied; land was farmed, improved and irrigated, and livestock was kept." 785 P.2d at 419–20. While this language by itself might imply that the land use by all property owners is pertinent to the occupation requirement, the court also noted that there were "no allegations that the parcels lacked occupation up to a visible line," and it did not indicate whether the property use it discussed referred to the six defendants asserting a boundary by acquiescence or the plaintiff who opposed it. *Id.*

¶ 17 Two other cases analyze occupation and mutual acquiescence together, making it difficult to discern whether references to the opposing party's property use were pertinent to occupation or merely evidence of mutual acquiescence. *See Orton*, 970 P.2d at 1257; *Harding*, 353 P.2d at 913. In *Orton*, the supreme court affirmed a trial court's ruling establishing a boundary by acquiescence. 970 P.2d at 1258. After noting evidence of a partial fence between the two properties, the fact that "all prior owners of both lots viewed the old fence line as the boundary" and evidence that "the owners occupied their respective properties to that line," the court concluded that both the acquiescence and occupation elements had been satisfied without further discussion. *Id.* at 1257.

¶ 18 And in *Harding*, the supreme court seemed to treat the opposing owner's land use as pertinent to the occupation element, but its analysis mirrors the way subsequent courts have approached mutual acquiescence. *See* 353 P.2d at 913–14. In that case, the opposing party argued that "no boundary by acquiescence could be acquired as to [his land], which was vacant, because of [his own] nonoccupancy." *Id.* at 912–13. The court rejected that argument, holding that all the elements of boundary by acquiescence were satisfied. *Id.* at 913–14. The court pointed to the opposing party's plans to open a candy store and frequent visits to the property as evidence of occupancy even though the opposing landowner had never followed through by improving the land in any way. *Id.* The court's analysis, however, relied on mutual acquiescence case law, *id.*, and its reasoning, though couched in terms of occupancy, closely resembles the way Utah appellate courts currently approach the question of mutual acquiescence:

> The occupancy intended as a requirement in satisfying the rule may be actual or constructive, by an owner, who may frequently or occasionally enter and physically occupy his land, but who must be shown to have occupied it thus at such reasonable intervals and during a period within which a boundary by acquiescence might be acquired, as to have knowledge of the physical facts that, through passage of time, might create rights in others to his land under the doctrine, with an opportunity to interrupt their fruition.

*Id.* Mutual acquiescence similarly turns on whether the circumstances of an owner's action or inaction permit a reasonable inference that she "impliedly consents" to a physical boundary. *See Essential Botanical Farms,*

*LC,* 2011 UT 71, ¶ 26, 270 P.3d 430 (citation and internal quotation marks omitted).

¶ 19 Similar to *Orton,* the *Harding* court's reliance on mutual acquiescence cases for a conclusion about occupancy makes it difficult to determine whether the court saw the opposing owner's activity as pertinent to the occupation requirement or merely as evidence of his acquiescence. Thus, while it is possible to argue that language in *Harding* and *Orton* is inconsistent with our occupation analysis, our approach is in harmony with the substantive holdings of those cases and, as we explain *infra,* with the long-standing policy behind the boundary by acquiescence doctrine.

■■ ¶ 20 Finally, restricting the analysis of occupation to the claiming party's land use is consistent with the policy concerns that underlie boundary by acquiescence. The doctrine "is rooted in policy considerations of avoiding litigation and promoting stability in landownership" and serves the "peace and good order of society . . . by leaving at rest possible disputes over long established boundaries." *Bahr v. Imus,* 2011 UT 19, ¶ 35, 250 P.3d 56 (citation and internal quotation marks omitted). The "essence" of boundary by acquiescence "is that where there has been any type of a recognizable physical boundary, which has been accepted as such for a long period of time, it should be presumed that any dispute or disagreement over the boundary has been reconciled in some manner." *Baum v. Defa,* 525 P.2d 725, 726 (Utah 1974) (citation omitted). For that very reason, the doctrine focuses on perhaps the central concern in deciding ancient boundary disputes between competing owners: "Under the doctrine of boundary by acquiescence, property rights are determined by actual possession of land." *Gillmor v. Cummings,* 904 P.2d 703, 707 (Utah Ct.App. 1995); *see also Olsen v. Park Daughters Inv. Co.,* 29 Utah 2d 421, 511 P.2d 145, 148 (1973) (noting that property rights acquired through boundary by acquiescence are "based on actual possession of land"); *cf.* Utah Code Ann. §§ 78B–2–211, –213 (LexisNexis 2012) (providing that land must be enclosed, cultivated, or improved for a claimant to establish ownership through adverse

possession); *id.* § 57–9–2(2), (3) (LexisNexis 2010) (exempting from the Marketable Record Title Act property interests established by continuous possession for forty years or more and rights "arising from prescriptive use or a period of adverse possession").

¶ 21 A rule requiring active occupation on both sides of a disputed boundary runs counter to the central policy concerns that seem to underlie the doctrine. If opposing owners can avoid the doctrine through their own inaction, an owner with land adjacent to a vacant lot would be insecure in her title no matter how long the land had been under her exclusive development and possession. Physical boundaries established long ago in reliance on what are now considered primitive and imprecise surveying techniques could be challenged most easily by owners who had long neglected their property. Thus, requiring active occupation "by both of the adjoining landowners," as Anderson suggests, would undermine the stability of land ownership and potentially encourage litigation by undercutting the presumption in favor of actual possession upon which the doctrine is based. It would also reward an opposing owner's indolence in the face of active occupation by the claiming owner. *See Lane v. Walker,* 29 Utah 2d 119, 505 P.2d 1199, 1200 (1973) (holding that an owner "consent[ed] by silence" to a fence as a boundary because he did not do "anything about it for 48 years" (internal quotation marks omitted)); *Brown v. Jorgensen,* 2006 UT App 168, ¶ 15, 136 P.3d 1252 (noting that "silence, or the failure to object to a line as a boundary" is evidence of acquiescence (citation and internal quotation marks omitted)).

■ ¶ 22 Thus, in light of the underlying policy and our review of the pertinent case law, we conclude that an owner satisfies the occupation element of boundary by acquiescence when her use of land up to a visible line "would place a reasonable party on notice that the given line was being treated as a boundary between the properties." *See Bahr,* 2011 UT 19, ¶ 36, 250 P.3d 56. The land use of the other owner may be pertinent to the issue of mutual acquiescence, but it is not material to the occupancy requirement.

¶ 23 Here, there is no dispute that Fautin and her predecessor "grazed livestock on the property" and "continued to use [it] up to the existing fence line for a period of more than 20 years." Anderson has not alleged that the fence functioned as anything other than a boundary or that Fautin's activity was insufficient to objectively demonstrate to any neighboring owners that she was treating the fence as a boundary. We therefore agree with the district court that Fautin's "active use of the disputed area satisfies the occupancy requirement in establishing a boundary by acquiescence" and that Anderson's failure to occupy the land up to the fence does not defeat that requirement.

¶ 24 Furthermore, because the other three elements of boundary by acquiescence are either satisfied or uncontested on appeal,[4] we affirm the district court's conclusion that Fautin "satisfied, as a matter of law, the four requirements for establishing a boundary by acquiescence."

## CONCLUSION

¶ 25 We agree with the district court that the claiming party in a boundary by acquiescence case can satisfy the occupation element by establishing her own active property use up to a visible boundary. We therefore conclude that Fautin's active use of her land up to the fence for more than twenty years satisfied the occupation requirement. And because Anderson has not challenged the district court's determination that the other three elements were also satisfied, we affirm its decision establishing the fence as the boundary between the two properties.

4. Anderson challenged whether Fautin had met the mutual acquiescence requirement in the summary judgment proceedings before the district court, and the court's written decision addressed "whether there was mutual acquiescence in the [fence] line as a boundary" separately from the occupation requirement. Anderson does not challenge that component of the district court's decision on appeal. Rather, he characterizes the "one issue" in the case as whether "the doctrine of boundary by acquiescence require[s] occupation by adjoining landowners on both sides of the monumented line."