IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| James S. Dean and Sherlene T. Dean, | ) | OPINION |
| | ) | |
| Plaintiffs and Appellees, | ) | Case No. 20110427-CA |
| | ) | |
| v. | ) | |
| | ) | F I L E D |
| Kang Sik Park, trustee of the Kang Sik | ) | (December 13, 2012) |
| Park Revocable Trust, and Marsha K. | ) | |
| Park, | ) | 2012 UT App 349 |
| | ) | |
| Defendants and Appellants. | ) | |

-----

Third District, Salt Lake Department, 090908746
The Honorable John Paul Kennedy

Attorneys:     Robert E. Mansfield, James D. Gardner, and Adam C. Buck, Salt Lake
               City, for Appellants
               Bryce D. Panzer, Salt Lake City, for Appellees

-----

Before Judges McHugh, Voros, and Christiansen.

CHRISTIANSEN, Judge:

¶1     Defendants Kang Sik Park and Marsha K. Park (the Parks) appeal from the trial court's decision to quiet title in Plaintiffs James S. Dean and Sherlene T. Dean (the Deans). Specifically, the Parks assert that the trial court erred in determining that they failed to prove that both they and their neighbors acquiesced to a boundary marked by a wooden fence and that the Parks occupied the property up to the wooden fence. For the reasons stated below, we affirm the trial court's decision.

BACKGROUND

¶2     This case arises over a boundary dispute between neighbors in the Federal Heights area of Salt Lake City. The Deans purchased Lot 9 of Federal Heights Plat "D" in April 2005. As part of a complete home renovation, the Deans planned to replace an old wooden fence that ran between their lot and Lot 8, which was owned by their next-door neighbors, the Parks. To that end, they obtained a survey of Lot 9 and found that the existing wooden fence running from the southwest corner to the northwest portion of their property was located inside the record boundary line by several feet. The wooden fence also ran east-west along part of the rear border of Lot 9. At the rear of the Deans' property there is also a chain-link fence that runs east-west on the record boundary line, runs parallel to the wooden fence up to the southwest corner of the Deans' lot, and runs approximately twenty feet to the north, mostly parallel to the wooden fence. The divergence between the wooden fence and the record boundary line partially marked by the chain-link fence creates a small triangular plot of land that has become overgrown by a number of Elm trees (the Disputed Area). After it became apparent that the Parks challenged the Deans' ownership of the Disputed Area, the Deans filed an action to quiet title to the area and alternatively sought an order allowing them to remove the trees, which they alleged threatened their house and property. The Parks counterclaimed, seeking to quiet title to the Disputed Area under the theory of boundary by acquiescence.

¶3     The Deans' lot is one of three previously owned by Ms. Park and her former husband, Dr. Jed Morrison. Ms. Park worked for a licensed real estate broker from the late 1970s until 1992, when she obtained her own broker's license. Dr. Morrison and Ms. Park bought Lots 8, 9, and 10 of Federal Heights Plat "D" in 1977. They built their home on Lot 10 because it was at the top of a gentle slope that extended across all three lots. The Morrisons built several chain-link fences in and around the three lots. Some of the chain-link fences, like the fence between Lots 9 and 10, did not follow the record boundary line; other fences, like the fence between Lots 8 and 9, partially marked the record boundary line. The chain-link fence between Lots 8 and 9 runs exactly along the record boundary line for approximately twenty feet.

¶4     When they divorced in 1983, Dr. Morrison retained Lot 9 and conveyed his interest in Lots 8 and 10, located on either side of Lot 9, to Ms. Park. Dr. Morrison sold Lot 9 to David Clark in 1983. During the same year, Ms. Park constructed a new home on Lot 8, where she took up residence. She conveyed that parcel to Dr. Park in 1988 and

relocated. Ms. Park and Dr. Park were married in 1991, whereupon Ms. Park moved back into the Lot 8 residence.

¶5     After purchasing Lot 9, Clark, a professional architect, elected to level his property by bringing in a substantial amount of fill before building a home and fence. This created a three-foot drop between his property and the Parks' property. The drop is most pronounced toward the northwestern portion of Lots 8 and 9 and gradually lessens toward the rear of the lots until the properties are nearly level at the southwestern corner. In approximately 1984, Clark constructed a wooden fence atop his newly-raised property, which is located inside the record boundary line. The wooden fence ran from the back of Lot 9 inside the existing chain-link fence, then angled inside the record boundary line toward Clark's house. The wooden fence did not run in a straight line, but appeared to jog around some trees. The wooden fence sat approximately three-and-a-half feet inside the record boundary line at the northernmost point of Clark's house and four feet inside the record boundary line at the southwest corner of Clark's house. If Clark had instead built the wooden fence at the bottom of the embankment between the lots, where the record boundary line runs, the fence would have extended only approximately three feet above the level of his backyard and would not have created privacy between the lots. Clark was unavailable to testify at trial.

¶6     The Parks testified that they occupied the Disputed Area by watering, fertilizing, gardening, maintaining, and allowing Elm trees to grow on it. However, the trial court found that "any watering or fertilizing of the Disputed Area was incidental to watering or fertilizing of the grassy area of the back yard adjacent to the Disputed Area. No sprinkler heads or lines are located in the disputed area." The court also found that "[Ms. Park]'s children occasionally planted small plants and flowers above the boulders in the Disputed Area until approximately 1988, but [Ms. Park] never planted anything in the Disputed Area after 1988. . . . [Ms. Park] has rarely even gone into the back yard since 1993." Furthermore, "the Disputed Area is not suitable for vegetable gardening and has not been for a significant period of time." Finally, the court found that "the Parks have not made any significant use of the Disputed Area since at least 2005, and likely since 1988, based on both the state of the Disputed Area and Ms. Dean's observation of the Parks' activities." Critically, the court found Dr. Park's testimony regarding the Parks' use of the land to be unreliable. "Dr. Park's testimony regarding use of the Disputed Area was not consistent on a number of subjects, such as . . . when grass . . . [and] trees were growing in the Disputed Area . . . . [His] testimony in this matter is not credible and as a result . . . no weight [is given] to his testimony."

¶7    Clark's wooden fence stood undisturbed and undisputed until the Deans bought and surveyed the property. When they found that the fence was not on the record boundary line, they notified the Parks in writing of their intent to replace and rebuild it on the boundary line. In response, the Parks wrote two letters disputing ownership of the area. The Deans removed the fence but preserved the fence posts and agreed to leave the Elm trees pending a resolution of this dispute. The Deans brought suit to quiet title on May 26, 2009. The Parks counterclaimed, arguing their right to quiet title under the doctrine of boundary by acquiescence.

¶8    The trial court found that the Parks failed to meet their burden to establish two of the elements necessary to prove a boundary by acquiescence: (1) mutual acquiescence in a line as the boundary and (2) continuous occupation of the disputed area. The trial court ultimately found that Clark built the wooden fence where he did as a barrier to protect his privacy, rather than to establish the boundary between his and the Parks' lots. The court found that the Parks' testimonies regarding mutual acquiescence and continuous occupation were not credible. Accordingly, the trial court quieted title to the Disputed Area in the Deans and authorized the Deans to remove the Elm trees from the property. The trial court made extensive findings of fact and conclusions of law. This appeal, which addresses only the boundary by acquiescence issues, followed.


ISSUES AND STANDARDS OF REVIEW


¶9    The primary issue raised in this appeal is whether the trial court erred in rejecting the Parks' boundary by acquiescence claim and in quieting title to the Deans. The Parks argue first that the trial court erred in determining that they failed to demonstrate mutual acquiescence in the wooden fence as the boundary line. Related to this issue, the Parks challenge the trial court's reliance on what they characterize as Clark's subjective intent in building the wooden fence. Second, the Parks argue that the trial court erred in finding that the Parks did not adequately occupy the Disputed Area.

¶10   We review a trial court's determination of a boundary by acquiescence claim for correctness. *See RHN Corp. v. Veibell*, 2004 UT 60, ¶ 22, 96 P.3d 935. However, the trial court's conclusions of law on this issue are "'highly fact-dependent . . . , with numerous potential fact patterns, which accord[s] the trial judge a broad measure of discretion when applying the correct legal standard to a given set of facts.'" *Orton v. Carter*, 970 P.2d 1254, 1256 (Utah 1998) (quoting *Valcarce v. Fitzgerald*, 961 P.2d 305, 311 (Utah

1998)). To the extent that the Parks challenge the trial court's factual findings, we will not set them aside unless they are clearly erroneous. *See Veibell*, 2004 UT 60, ¶ 22.

ANALYSIS

¶11    Under long-established Utah law,

> [f]or a court to quiet title in a parcel of property on the basis of boundary by acquiescence, the party claiming title to property under the doctrine must establish "(i) occupation up to a visible line marked by monuments, fences, or buildings, (ii) mutual acquiescence in the line as a boundary, (iii) for a long period of time, [and] (iv) by adjoining landowners."

*Ault v. Holden*, 2002 UT 33, ¶ 16, 44 P.3d 781 (second alteration in original) (quoting *Orton*, 970 P.2d at 1257); *accord Essential Botanical Farms, LC v. Kay*, 2011 UT 71, ¶ 6, 270 P.3d 430; *Goodman v. Wilkinson*, 629 P.2d 447, 448 (Utah 1981). "If the party attempting to establish boundary by acquiescence fails to satisfy any *one* of the elements of the doctrine, the boundary is defeated." *Ault*, 2002 UT 33, ¶ 16. Because the Parks invoked the doctrine of boundary by acquiescence in this case, the burden of satisfying each element rests with them, and their burden for doing so is by clear and convincing evidence. *See Essential Botanical*, 2011 UT 71, ¶ 22 (explaining that "[b]ecause boundary by acquiescence . . . alters fee simple ownership of real property, we hold that a claim of boundary by acquiescence must be proven by clear and convincing evidence").[1] The Parks argue that the trial court erred in determining that they failed to establish both the mutual acquiescence and occupation elements of boundary by acquiescence.

---

[1]The Utah Supreme Court's decision in *Essential Botanical Farms, LC v. Kay*, 2011 UT 71, 270 P.3d 430, was entered eight months after the trial court's decision in this case. Of significance, however, is the trial court conclusion "that the Parks have not carried their burden to establish boundary by acquiescence by either a preponderance of the evidence or by clear and convincing evidence." We agree that the Parks failed to carry their burden either by a preponderance of the evidence or by clear and convincing evidence.

## I. Mutual Acquiescence

¶12    The Parks first argue that the trial court erred in determining that they failed to present clear and convincing evidence that they and their neighbors mutually acquiesced in the wooden fence as the boundary line between the two properties. "'Under the doctrine of boundary by acquiescence, the party attempting to establish a particular line as the boundary between properties must establish that the parties mutually acquiesced in the line as separating the properties.'" *Essential Botanical*, 2011 UT 71, ¶ 26 (quoting *Veibell*, 2004 UT 60, ¶ 24).

¶13    Specifically, the Parks take issue with the trial court's conclusion that "the most important factor regarding acquiescence in this unique case is the purpose of Clark's fence." The Parks argue that the trial court incorrectly surmised Clark's subjective intent in building the wooden fence and relied on that supposition to conclude that Clark did not acquiesce to the wooden fence as the boundary, in contravention of the Utah Supreme Court's recent decision in *Essential Botanical Farms, LC v. Kay*, 2011 UT 71, 270 P.3d 430.

¶14    In *Essential Botanical*, the supreme court made clear that a determination of mutual acquiescence must be based on the objective behavior of the adjacent landowners regardless of an owner's subjective beliefs about the boundary. *Id.* ¶¶ 27–28. The court explained,

> [A] party's subjective intent has no bearing on the existence of mutual acquiescence. Instead, acquiescence in, or recognition of, a boundary is an objective determination based solely on the parties' actions in relation to each other and to the line serving as the boundary. Mutual acquiescence arises "where neighbors do not *behave*[] in a fashion inconsistent with the belief that a given line is the boundary between their properties. . . ." [R]ecognition is displayed through specific actions, the existence of which is not determined by the actor's mental state. As a result, the determination of mutual acquiescence is based on the objective behavior of the adjacent landowners regardless of their subjective intent to act in such a manner.

*Id.* ¶ 27 (second alteration in original) (additional citations and internal quotation marks omitted) (quoting *Bahr v. Imus*, 2011 UT 19, ¶ 37, 250 P.3d 56). The court then elaborated that "a subjective belief regarding the location of a boundary may be evidence of mutual acquiescence, but only to the extent that such understanding is based on the objective actions of the landowners." *Id.* ¶ 28.

¶15    Given the supreme court's discussion in *Essential Botanical*, we agree with the Parks' assertion that in boundary by acquiescence cases, a party's subjective belief about a particular boundary may not be determinative to a finding of mutual acquiescence. However, the Parks misconstrue the trial court's findings in this case as well as the supreme court's analysis of subjective intent. We take this opportunity to clarify the trial court's finding that "the most important factor regarding acquiescence in this unique case is the purpose of Clark's fence" in light of *Essential Botanical*.

¶16    After clarifying that the subjective belief or mental state of a party has no bearing on the determination of mutual acquiescence except where it is based on the party's objective actions, the *Essential Botanical* court concluded that "the landowners mutually acquiesced by recognizing and treating the fence as the boundary between their properties" in part because "all five witnesses were consistent in their testimony that they always *believed* the fence was the boundary between their properties." *Id.* ¶ 29 (emphasis added). The court went on to explain that their belief was supported by testimony as to the landowners' actions, in particular, generations of farming the land and treating the fence as the separating line between the farms. *Id*.

¶17    Although the *Essential Botanical* court did not discuss mutual acquiescence specifically in terms of purpose, we do not understand "purpose" as falling exclusively into either the category of subjective belief, intent, or mental state on the one hand or the category of objective action and behavior on the other. Instead, the term "purpose," similar to the supreme court's use of the term "belief," can be explained by mental state *or* by objective action. In *Essential Botanical*, when stating that the landowners "believed" that the fence was a boundary, the supreme court relied on the objective actions of the landowners in determining their recognition and treatment of the fence as the boundary. *See id.*

¶18    A case more factually on point with the present case is *Wilkinson Family Farm, LLC v. Babcock*, 1999 UT App 366, 993 P.2d 229. In *Wilkinson,* the adjoining landowners knew the location of the "true" boundary. *Id.* ¶ 4. A fence was built on a particular

location just off of the true boundary line to avoid impractical topography, and it was built to contain cattle. *Id.* ¶¶ 3–4. This court affirmed the trial court's consideration of the parties' purpose in building the fence, concluding that the purpose of the fence was determinative of mutual acquiescence because the fence was not "intended as a boundary" but rather as a means of containing livestock. *Id.* ¶¶ 4, 9–10.

¶19     We explained that "Utah courts have consistently considered the purpose of a fence or other marker in determining whether parties in dispute mutually acquiesced in a fence as a boundary, typically concluding that there is no acquiescence where the fence was not intended as a boundary." *Id.* ¶ 10 (collecting cases in which a fence was built for detaining livestock instead of as a boundary). Importantly, in *Wilkinson*, we used the terms "purpose" and "intent" to explain the landowners' subjective intent only insofar as the purpose or intent in building the fence was supported by the landowners' objective actions. *See id.* ¶¶ 9–10. What also sets *Wilkinson* apart from *Essential Botanical* is that, in *Wilkinson*, the landowners' behavior demonstrates that they did *not* recognize and treat the line as a boundary, whereas in *Essential Botanical*, the landowners did. *See* 1999 UT App 366, ¶¶ 9–10; *see also Essential Botanical Farms, LC v. Kay*, 2011 UT 71, ¶¶ 29–31, 270 P.3d 430.

¶20     Similarly, here, based upon the evidence submitted at trial, the trial court inferred that Clark built the wooden fence to protect the privacy of his yard and patio rather than to establish a boundary. The trial court found that prior to building the house, Clark brought in a substantial amount of soil to raise the level of Lot 9. Due to the raised level of the property, "there is a short but relatively steep sloped area between the lots, especially in the vicinity of the homes . . . . The record property line runs through the sloped area between the two lots." Clark built the wooden fence along the highest point of this slope between the lots. "This location maximized the privacy afforded to both Lot 9 and Lot 8." Specifically, the trial court explained,

> Had Clark constructed the wood fence along the record property line . . . the fence would have been three to four feet lower, giving the fence the appearance of being only about three feet tall from the perspective of someone in Lot 9 on the patio area behind the house. This would have resulted in reduced privacy to the back yards of both lots, as the fence would have been much easier to see over and thus to see into each yard from the other.

¶21  We disagree with the Parks' assertion that the court incorrectly relied on Clark's subjective purpose or intent, in contravention of *Essential Botanical*. *See Essential Botanical*, 2011 UT 71, ¶¶ 27–29. To the contrary, we conclude that the trial court's reliance on Clark's purpose in building the wooden fence was based on Clark's demonstrated experience and objective actions. And given that Clark did not testify, the trial court's use of the word "purpose" was not based on Clark's mental state or intent.

¶22  Furthermore, in this case, the landowners knew the location of the actual record boundary line between Lots 8 and 9. This court also addressed the landowners' knowledge of the "true" boundary line in *Wilkinson*. There, the trial court found that the parties and their predecessors knew the location of the "true" boundary and used the disputed area between the actual boundary and the fence for their respective activities. *See Wilkinson*, 1999 UT App 366, ¶ 4. This court affirmed, concluding that the parties did not mutually acquiesce to the fence in part due to their knowledge of the actual boundary line: "'[I]f there is no uncertainty as to the location of the true boundary line the parties may not, knowing where the true boundary line is, establish a boundary line by acquiescence at another place.'" *Id.* ¶ 12 (quoting *Nunley v. Walker*, 369 P.2d 117, 122 (Utah 1962)).

¶23  We construe "knowledge" much the same as we do "purpose." In light of *Essential Botanical*, the landowners' knowledge of the true boundary line is important when such knowledge is inferred from the evidence of the landowners' objective actions, rather than as an independent indication of the landowners' subjective belief, intent, or mental state. *See Essential Botanical*, 2011 UT 71, ¶¶ 27–29. Here, in addition to Clark's purpose for building the wooden fence where he did, the trial court found that both Clark and Ms. Park had some degree of knowledge of the record boundary line.

¶24  With regard to Clark, the trial court found that he

> was an architect by profession, [who] designed and built the home on Lot 9 during 1984. Based upon Clark's profession and the approval of his building plans by the city, the Court finds that Clark knew where the record boundary line was and constructed his house in substantial compliance with the setback and side yard requirements . . . as evidenced by the fact that the corners of the home on Lot 9 are nearly exactly

ten (10) feet from the record property line and twenty feet combined.

¶25 And with regard to Ms. Park, the court found that "[b]ased on her long history of detailed involvement with the properties and her professional expertise, . . . [Ms. Park] had or at one time had actual knowledge of the record property lines for the lots." In particular, the court found that Ms. Park worked in real estate when she purchased the lots; that she was involved with the construction of homes on Lots 8 and 10; that she had viewed the plat maps when she purchased the lots and therefore knew that the boundary lines were not straight; and that she was involved with the construction of the chain-link fence on the record boundary line between the lots. Also, the court found that the chain-link fence built by Ms. Park and her former husband that partially marked the true boundary between Lots 8 and 9 remained in place even after Clark built the wooden fence in 1984.

¶26 The trial court thus determined "that Clark's and [Ms. Park]'s knowledge of the true, record boundary line between the lots is relevant to the issue of acquiescence and weighs against mutual acquiescence in this case." The trial court correctly relied on the parties' knowledge of the "true" boundary line because it found that their knowledge was evidenced by their objective actions and behavior as demonstrated by their involvement and professional expertise.

¶27 The trial court correctly considered Clark's purpose for building the wooden fence in determining that he had not acquiesced in that line as the boundary between the lots. The trial court also properly considered Clark's and Ms. Park's knowledge of the actual boundary line between the lots in determining that they had not acquiesced in the wooden fence line as the boundary. Thus, we affirm the trial court's determination that the Parks failed to meet their burden of proving by clear and convincing evidence that the parties had mutually acquiesced to the wooden fence as marking the boundary between Lots 8 and 9.

## II. Occupation

¶28 The Parks also contend that the trial court erred in concluding that they inadequately demonstrated their occupation of the Disputed Area in establishing their boundary by acquiescence claim. We determine that the trial court did not err in

20110427-CA                                   10

concluding that the Parks failed to present clear and convincing evidence that they adequately occupied the Disputed Area.

¶29 Under Utah law, "courts should consider whether a particular 'occupation up to a visible line' would place a reasonable party on notice that the given line was being treated as the boundary between the properties." *Bahr v. Imus*, 2011 UT 19, ¶ 36, 250 P.3d 56. The trial court's findings refer to a similar standard, "a pattern of use that is normal and appropriate for the character and location of the land." *See Englert v. Zane*, 848 P.2d 165, 170 (Utah Ct. App. 1993). The trial court found that the Parks failed to provide credible evidence meeting this standard.

¶30 At trial, the Parks claimed that they occupied the land by watering and fertilizing the ground and by allowing the Elm trees to remain. However, the trial court specifically included in its findings of fact that "any watering or fertilizing of the Disputed Area was incidental to watering of fertilizing of the grassy area of the back yard adjacent to the Disputed Area. No sprinkler heads or lines are located in the disputed area." Although Dr. Park claimed to have maintained a vegetable garden in the area, the trial court found that he "was not consistent on a number of subjects" and that "Dr. Park's testimony in this matter is not credible and as a result g[ave] no weight to his testimony." Further, the court found that "the Disputed Area is not suitable for vegetable gardening and has not been for a significant period of time," that Ms. Park "never planted anything in the Disputed Area after 1988," and that she has "rarely even gone into the back yard since 1993."

¶31 "We 'will not reverse the findings of fact of a trial court sitting without a jury unless they are . . . clearly erroneous.'" *RHN Corp. v. Veibell*, 2004 UT 60, ¶ 22, 96 P.3d 935 (quoting *Orton v. Carter*, 970 P.2d 1254, 1256 (Utah 1998)). Furthermore, Utah law states that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Utah R. Civ. P. 52(a). The evidence was sufficient to support the findings, and we therefore see no reason to set aside the trial court's factual findings in this case. The Parks have not pointed us to any compelling record evidence that they used the Disputed Area in any significant way or that their actions could reasonably have been expected to put the Deans or their predecessors on notice that the wooden fence was being treated as a boundary between the lots. Thus, the Parks have failed to meet their burden of proving by clear and

convincing evidence that the "occupation" prong of the boundary by acquiescence doctrine was satisfied.

CONCLUSION

¶32     The trial court did not err in considering the purpose for the construction of the wooden fence and in determining that the parties had knowledge of the true boundary line between Lots 8 and 9. In addition, we cannot say that the trial court's determination that the Parks failed to prove that they occupied the Disputed Area was erroneous. Therefore, we agree that the Parks failed to establish by clear and convincing evidence that both parties mutually acquiesced to a boundary change and that the Parks sufficiently occupied the Disputed Area. We accordingly affirm the trial court's determination quieting title of the Disputed Area in the Deans.

_____
Michele M. Christiansen, Judge

-----

¶33     WE CONCUR:

_____
Carolyn B. McHugh, Judge

_____
J. Frederic Voros Jr., Judge