BRIEM et al. v. SMITH et al.

No. 6267.   Decided April 11, 1941.   (112 P. 2d 145.)

*Thatcher & Young,* of Ogden, for appellants.

*Arthur Woolley,* of Ogden, for respondents.

WOLFE, Justice.

This case, involving a boundary line dispute, is before us on appeal. The property is located in Ogden, Weber County, Utah.

Plaintiffs, appellants in this court, and defendants, respondents here, are the owners of adjoining properties, facing North on 21st Street, in Lot 6, Block 43, Plat "A," Ogden City Survey. The descriptions of both pieces of property commence from a common tie point, namely, the Northwest Corner of the said Lot 6, and both are of the same depth. By the description in plaintiffs' deed, their property commences 132 feet East of the common point, and extends East 33 feet. It is the same width, 33 feet, at the rear or South end. Defendants' property, as described in their deed, commences 165 feet East of the common point (this being 132 feet, the point of beginning of plaintiffs' lot, plus its width of 33 feet) and runs East for a width of 41½ feet, and is of equal width at the South end.

By this action plaintiffs sought to quiet title in their property as described and to have the boundary line fixed along the line of survey as made from the common point according to the descriptions in the deeds. By counterclaim defendants sought to have the boundary line fixed according to a fence line, the fence having been originally constructed in 1909, or about 30 years prior to the commencement of this action, and since, allegedly recognized and acquiesced in as the boundary line between the properties by the plaintiffs and their predecessors in interest. This line, as found by the lower court, extends over the survey

line onto plaintiffs' property as described in their deed, a distance of 7 inches on the North or front end and 26 inches on the South end. Thus the measurements of plaintiffs' property would be reduced to a width of 32 feet 5 inches in front and 30 feet, 10 inches in the rear, so that this contest involves a narrow, trapezoid-shaped strip of land 7 inches wide at one end and 26 inches wide at the other end. Only the front section of the fence remained at the time of the commencement of this action, the exact line or location of the remaining sections having been the subject of considerable conflicting evidence.

Defendants' claim is based on the rule long recognized by this court that

"where the owners of adjoining lands occupy their respective premises up to a certain line which they mutually recognize as the boundary line for a long period of time, they and their grantees may not deny that the boundary line thus recognized is the true one." *Tripp* v. *Bagley*, 74 Utah 57, 276 P. 912, at page 916, 69 A. L. R. 1417, citing numerous cases.

However, the question of acquiescence is one to be decided from the particular facts and circumstances of the case. Thompson on Real Property, Perm. Ed. Vol. 6, § 3309. From a careful analysis of the facts in the instant case, we conclude that the general rule does not apply here and that the judgment of the lower court should be reversed.

Here we are not concerned with a boundary line that was uncertain for any reason other than that the fence, possibly inadvertently, was erected on a diagonal line. Up to the time this case was started, there is no indication that the exact location of the fence was considered material by either party or that it affected in any way the enjoyment of either piece of property, either by way of enhancement or limitation. The true dividing line was readily ascertainable by measurements from a convenient point common to both properties.

Reverting to the facts further, we find that William H. Toller, as the then owner of defendant's property, built the fence in 1909. In April, 1919, he purchased the property herein called plaintiff's. For a period of 17 months, or until September, 1920, when he sold his first piece of property to defendants, Toller owned both of these adjoining properties. He thus became a common source of the title to each of the lots. As the common owner of the two he had the full and unlimited power to make any and every possible use of the property. When, in September, 1920, he conveyed to defendants, he had the power to convey all or any part of his land. He conveyed one lot to them according to the same survey description by which it had been previously described. Any boundary line between the two properties, other than the line described in that deed, had its origin, if at all, at or after that time.

In 1929, plaintiffs, having purchased their property, tore down the section of the old fence running between their house and the house on defendants' property. This was with defendants' consent. Thereafter plaintiffs planted flowers and rose bushes between the houses up to defendants' house, without regard to any boundary line. Later defendants, having obtained plaintiffs' consent, tore down the fence extending from the back corner of their house to a point near the rear corner of plaintiffs' garage. After that plaintiffs built a lattice fence from the front corner of their garage to the back corner of defendants' house, so that thereafter defendants had use of the property up to the side of plaintiffs' garage, though the garage did not extend even to the old fence line and was well within plaintiffs' property. During all of this time cordial relations apparently existed between these parties. No trouble arose until 1939 when defendants decided to remodel their house in such a manner as to require a sidewalk between their house and plaintiffs', whereupon a dispute arose as to the line.

From the foregoing facts, it is apparent that from 1929 until the time of the trial, the owners and occupants of both premises used the same without any regard for the fence

line which had previously existed. From 1920 to 1929 was the only period during which any agreement to, or acquiescence in the fence line could have been in effect. Such a period would be much shorter than the periods accepted by the courts in developing the rule herein discussed. But regardless of that, it is apparent that the conduct of the parties since 1929 has been inconsistent with any interference as to the existence of such an agreement or acquiescence prior thereto.

In view of the above, we are not here called upon to decide whether the fence constructed by Toller was ever agreed to or recognized as a boundary.

It follows, therefore, that the decree of the lower court should be, and the same is, reversed. The trial court is directed to make findings of fact and conclusions of law in conformity herewith and to enter a decree quieting plaintiffs' title to the disputed land and fixing the boundary line between these properties along the true survey line in accordance with the descriptions set out in the deeds of the parties hereto. Costs to appellants.

MOFFAT, C. J., and LARSON, McDONOUGH, and PRATT, JJ., concur.