269 P.2d 1053

RINGWOOD et al. v. BRADFORD.

No. 8073.

Supreme Court of Utah.

May 10, 1954.

Robert C. Gibson, Salt Lake City, for appellant.

Lawrence L. Summerhays, Salt Lake City, for respondents.

## McDONOUGH, Chief Justice.

This action was originally begun as an action in unlawful detainer but plaintiffs—respondents here—waived that portion of the complaint praying damages and sought merely to quiet title in themselves to a portion of a lot, of which they are the record owners and upon which a canyon cabin of defendant—appellant here—has stood since 1934. The lower court held that despite the fact that a fence built in 1923, under the direction of plaintiff's predecessor in interest, was regarded by defendant as representing the true boundary, the doctrine of boundary of acquiescence does not apply in this case and entered judgment for plaintiffs requiring defendant to remove her cabin from plaintiffs' property. From this judgment defendant appeals.

The sole question involved on appeal is defendant's contention that the trial court should have found that the fence has been established as the boundary between the defendant's and plaintiffs' property by the doctrine of boundary by acquiescence. In support of this contention, she attacks the finding of fact made by the trial court that the fence was not used or intended as a boundary fence by plaintiffs.

This court cannot disturb the finding that the fence was not intended by plaintiffs' predecessor as a boundary marker, inasmuch as the plaintiffs presented evidence by the person who built the fence for Mr. Ringwood, the father of the plaintiffs, that he made no attempt to locate the boundary at the time of constructing the fence because the purpose of the installation was merely to protect newly planted Box Elder trees from sheep which were grazing in the area. Defendant presented no evidence of any discussion as to the boundary line prior to the present dispute nor any evidence that Mr. Ringwood's location of the fence was for any other purpose than that testified to. Defendant's evidence was all to the effect that the fence was in existence at the time her cabin was built in 1934, and that the cabin was built within a few feet of the fence for the reason that it was the most likely spot in the area which her predecessor believed belonged to him. It is noted that the then

owner of plaintiffs' property, the only person with the power to protest if he knew the true boundary, was ill in 1934, the year of the construction of defendant's cabin, and did not visit the canyon from that time and he died in 1935.

We therefore confront the question of whether a boundary by acquiescence is established by the fact that the present plaintiffs or their father did not affirmatively claim the property beyond the fence nor did they make any use of it inconsistent with the theory that they recognized the fence as a boundary line. In other words, is acquiescence, or lack of acts inconsistent with acquiescence, for a long period of years sufficient to raise a *conclusive* presumption that the fence was intended to proclaim the boundary between two properties or does a showing that the parties did not, in fact, recognize the fence as a boundary take the situation out of the doctrine?

It is stated in Glenn v. Whitney, 116 Utah 267, 273, 209 P.2d 257, 260:

> "The theory under which a boundary line is established by long acquiescence along an existing fence line is founded on the doctrine that the parties erect the fence to settle some doubt or uncertainty which they may have as to the location of the true boundary, and the [sic] compromise

their differences by agreeing to accept the fence line as the limiting line of their respective lands. The mere fact that a fence happens to be put up and neither party does anything about it for a long period of time will not establish it as the true boundary. Peterson v. Johnson, 84 Utah 89, 34 P.2d 697; Tripp v. Bagley, supra." [74 Utah 57, 276 P. 912, 69 A.L.R. 1417.]

The nature of the presumption which arises upon presentation of evidence of a monument in existence for a long period of time without protest has been inferentially treated by this court in a long line of cases,[1] many of which appear to be in conflict. For this reason and for the reason that the fact situation of this case is similar to that of Hummel v. Young, 1 Utah 2d 237, 265 P.2d 410, 411, the most recent pronouncement of this court on the doctrine of boundary by acquiescence, we quote at length from that case:

> "We further pointed out in Brown **v.** Milliner, supra [Utah, 232 P.2d 202] that in the absence of evidence that the owners of adjoining property or their predecessors in interest ever made an express parol agreement as to the location of the boundary between them if they have occupied their respective premises up to an open boundary line visibly marked by monuments,

---

1. See 3 Utah Law Review, p. 505, Boundary by Acquiescence.

fences or buildings for a long period of time and mutually recognized it as the dividing line between them, the law will *imply* an agreement fixing the boundary as located, if it can do so consistently with the facts appearing, and will not permit the parties nor their grantees to depart from such line. This rule is sometimes referred to as the doctrine of boundary by acquiescence. * * *

"Having concluded then that the evidence fails to establish that the fence in question was built pursuant to an express parol agreement between adjoining owners fixing the boundary, the question arises whether we can *imply* that such an agreement was made as we did in Holmes v. Judge, supra [31 Utah 269, 87 P. 1009] and in the cases following the Holmes case which are cited in Brown v. Milliner, supra, at page 207 of 232 P.2d. We think not. In all of those cases such an agreement could be implied without doing violence to the evidence appearing. In view of the state of the evidence this court could and did imply that a boundary agreement had been made between the adjoining owners at some time during the past. As explained by this court in Glenn v. Whitney, 116 Utah 267, 209 P.2d 257, the court in such cases indulges in the fiction that

at some time in the past the adjoining owners were in dispute or uncertain as to the location of the true boundary and that they settled their differences by agreeing upon the fence or other monument as the dividing line between their properties.

"In the instant case, there is no room, in view of the evidence appearing, to imply that the fence was built pursuant to agreement between the adjoining owners. * * *"

In the Hummel case, as in the present case, there was evidence that the fence was intended to enclose or exclude livestock. Likewise, there was evidence, as here, that the person building the fence intended to build it upon his own land and hence did not consult his neighbor. Additionally, in the present case testimony indicates that surveyor's stakes at least twenty years old were in the ground although they were overgrown with brush. Thus, it would appear that the usual mode of attempting to locate a boundary was employed at that time and at least weighs against the possibility that the parties would make an agreement or attempt to locate the boundary by guess. It is true that the Ringwoods never attempted to claim or use the property beyond the fence line, but it is also true that a witness testified that the eastern *half* of the property was not used for any purpose by the Ringwoods.

After a review of the Utah cases concerning boundary by acquiescence, a note in 3 Utah Law Review at page 514, Boundary by Acquiescence, concludes:

"In the absence of a showing of an actual agreement, when there has been (1) occupation up to a visible line marked definitely by monuments, fences or buildings and (2) acquiescence in the line as the boundary (3) for a long period of years (4) by adjoining landowners, the court is required to presume the existence of a binding agreement settling a dispute or uncertain boundary provided no facts rebutting the presumption are proved. As recognized in the cases, the presumption may be rebutted by (1) proof there actually was no agreement by the parties or (2) by proof that there could not have been a proper agreement. Factors showing the latter include the following: (a) no dispute or uncertainty over boundary, (b) line not intended as a boundary, (c) no parties available to make an agreement and (d) possibly mistake or inadvertence in locating the boundary line."

We agree that this is a valid conclusion to be drawn from the cases developing the doctrine in this state unless, indeed, basis (1) viz., proof that there was no agreement between the parties, is not alone sufficient to rebut the presumption discussed— a question with which we are not concerned under the facts of this case. As to that contention, see Mr. Justice Wade's concurrence in the result of Hummel v. Young, supra. To hold that the defendant's belief, reliance, and occupation up to the fence line, without more, are controlling in a boundary dispute would be to ignore the statutory guides for adverse possession since she did not pay taxes on that portion of land which she claims.

Judgment of the trial court is affirmed. Costs to respondents.

CROCKETT and WADE, JJ., and HOYT, District Judge, concur.

HENRIOD, J., concurs in the result.

WOLFE, C. J., being disqualified, did not participate herein.