353 P.2d 911

Glen F. HARDING, Plaintiff and Appellant,

v.

Mary ALLEN, Defendant and Respondent.

No. 9176.

Supreme Court of Utah.

June 24, 1960.

Howell, Stine & Olmstead, Ogden, for appellant.

Huggins & Huggins, Ogden, for respondent.

HENRIOD, Justice.

Appeal from a judgment for defendant in a boundary line case. Affirmed with costs to defendant.

Nub of this case is whether the court, as fact arbiter [1] erred in concluding that one of the courses of contiguous tracts had been established under the so-called doctrine of "boundary by acquiescence."

In reviewing under recognized rules [2] we can say that defendant in 1937 owned and still owns a house and lot adjoining plaintiff's present commercial property consisting of two contiguous tracts purchased in 1951 from two different predecessors. The tracts were called the Weller and Hunter tracts in the record.

The Hunter tract, a vacant lot, was acquired by Bessie McCready in 1920. The Weller tract, a house and lot, was acquired by Ogden State Bank in 1928. Both tracts were next conveyed to plaintiff's predeces-

1. Knapp v. Life Ins. Corp., 1958, 8 Utah 2d 220, 332 P.2d 662.
2. Christensen v. Christensen, 1959, 9 Utah 2d 102, 339 P.2d 101.

sors in interest *after* defendant had purchased her property in 1937. At that time there was an old board fence between the properties that was rotting away, and whose boards were falling off. The fence had approached within 10–12 feet from the west boundary of the properties according to several witnesses, but had been shortened some when one of the defendant's sons backed a truck into it. Also at the time defendant bought the property, there was a cement crossover driveway, wide enough to accommodate both properties. Its center was either in a direct line with one extended from the fence, or within a few inches thereof. In 1946 or 1947, defendant placed a new fence on the same line and took out the old cedar posts, many of which had rotted away.

Plaintiff built a concrete retaining wall about a foot south of the fence and a garage and apartment about three feet south of the retaining wall, leaving an open space, partly unused and partly used to install light wells. Incident to this construction plaintiff asked defendant if it would be all right to complete the fence to the west property line. He erected a permanent-type, chain-link fence. Thereafter, in 1954, he had the property surveyed and claimed it disclosed that the fence, which coursed at a slight oblique, formed a discrepant, but almost true, triangle with the survey line, whose base was 3.3 feet and whose sides were 115.5 feet. He then removed the fence and took the position that he owned to the survey line and commenced suit to prove it. He was met with defendant's claim of title by acquiescence.

The disputed triangular tract, areawise, represents about $1\frac{1}{3}\%$ of the plaintiff's property, or the size of an ordinary room about 14′ x 14′, and moneywise was worth about $89 at the time plaintiff acquired his property in 1951, as evidenced by the revenue stamps affixed to the deeds. We mention this data to point up a probable reason why people, in the early days, may have preferred to settle boundaries that were uncertain by a togetherness, in erecting fences and acquiescing in their being the binding boundaries between them, rather than to incur the expense of a survey that probably would exceed in value the small area involved and created by such discrepancies.[3]

3. In Provonsha v. Pitman, 6 Utah 2d 26, 305 P.2d 486, 487, where the fences and monuments were erected between properties having very little value, we paraphrased this thought thus: "We note these facts not only to show the almost infinitesimal value of the land at that time, but to suggest the likelihood that, in those early days when land was literally dirt cheap in the area, persons reasonably may have preferred to establish what might have been a not too accurate boundary and to have been content that it should be the dividing line, rather than to expend a sum that undoubtedly would have exceeded the value of the land involved."

At one time after Hunter had acquired the property which he later conveyed to the plaintiff, he approached defendant and secured her written consent to operate a candy store. Apparently the plan did not materialize, but that fact alone would tend to point to occupancy although no building was situate on the property.

The existence of a fence that in 1937 was so aged as to be rotting away certainly justified the conclusion that it had been there for a long time, and this fact, absent any affirmative action by anyone insisting on its removal from 1937 and 1954, bears out the correctness of the trial court's finding that a boundary by acquiescence equitably had been established, under principles enunciated and reaffirmed by this court and summarized by Mr. Chief Justice McDonough in Ringwood v. Bradford,[4]—particularly that part quoted from Brown v. Milliner.[5]

Plaintiff suggests that no boundary by acquiescence could be acquired as to the Hunter tract, which was vacant, because of nonoccupancy. The cases we have decided heretofore on this subject were cases where 1) the fence was erected to divide private property from the public domain,[6] or 2) erected by a person who owned the property on both sides,[7] or 3) by a person who did not own property on either side.[8] In those cases there were not two adjoining owners, both of whom were capable of acquiescing. In the instant case, however, Hunter did own the property and intended to operate a candy store thereon. The occupancy intended as a requirement in satisfying the rule may be actual or constructive, by an owner, who may frequently or occasionally enter and physically occupy his land, but who must be shown to have occupied it thus at such reasonable intervals and during a period within which a boundary by acquiescence might be acquired, as to have knowledge of the physical facts that, through passage of time, might create rights in others to his land under the doctrine, with an opportunity to interrupt their

4. 1954, 2 Utah 2d 119, 269 P.2d 1053.
5. 1951, 120 Utah 16, 232 P.2d 202, 207. " * * * in the absence of evidence that the owners of adjoining property or their predecessors in interest ever made an express parol agreement as to the location of the boundary between them, if they have occupied their respective premises up to an open boundary line visibly marked by monuments, fences or buildings for a long period of time and mutually recognized it as the dividing line between them, the law will *imply* an agreement fixing the boundary as located, if it can do so consistently with the facts appearing and will not permit the parties nor their grantees to depart from such line."
6. Peterson v. Johnson, 1934, 84 Utah 89, 34 P.2d 697, as interpreted in Brown v. Milliner, supra.
7. Home Owners' Loan Corp. v. Dudley, 1943, 105 Utah 208, 141 P.2d 160; Briem v. Smith, 1941, 100 Utah 213, 112 P.2d 145.
8. Glenn v. Whitney, 1949, 116 Utah 267, 209 P.2d 257; Tripp v. Bagley, 1928, 74 Utah 57, 276 P. 912, 69 A.L.R. 1417.

fruition. We think such opportunity was available here, particularly where the property's situs is in a busy city.

CROCKETT, C. J., and WADE, McDONOUGH and CALLISTER, JJ., concur.