Lucile M. **HALES**, Plaintiff-Appellant,

v.

Ralph **FRAKES**, Defendant-Respondent.

No. 15771.

Supreme Court of Utah.

Sept. 11, 1979.

Dale M. Dorius of Dorius & Dryden, Brigham City, for plaintiff-appellant.

Walter G. Mann, Brigham City, for defendant-respondent.

WILKINS, Justice:

This is an appeal from a judgment and decree of the District Court of Box Elder County, sitting without a jury, in which the Court ruled against plaintiff's contention that she was entitled to the property in dispute on the basis of the doctrine of boundary by acquiescence. This case involves a boundary dispute between the parties, who are adjoining landowners in Box Elder County. The disputed parcel is a strip two rods wide running along the northern boundary of section 23, bounded on the north by the true (surveyed) boundary line between sections 14 and 23, as found in a 1974 survey, and on the south by a fence line established by the predecessors in interest of defendant. Record title to the disputed strip is in the defendant, who owns property south of the strip in question in section 23. Plaintiff owns property in section 14 north of defendant and of the strip in question.

The controversy arose when the defendant, in 1974, tore down the fence two rods inside his northern boundary, and claimed to the true boundary line. This fence had been built in 1933 by one Newman for one Dunn. Newman testified, and the District Court found, that the fence was built to control animals and was not intended as a boundary, and was built two rods off the section line in the expectation that a road four rods wide would be extended from the west (where there was such a road) across the disputed boundary. The fence was in line with the south side of the road to the west, and was offset two rods from a fence to the east which lay along the true property line and if extended would go down the middle of the county road.

Defendant and his predecessors had an irrigation ditch and their own road south of the fence, and never interfered with the use by plaintiff and her predecessors of the land north of the fence until defendant tore down the fence in 1974.

When Newman built the fence in 1933, he put it on the same line as an older fence which he thought was built by one Roche. In 1925 Roche was involved in a civil suit with one Wight, who owned property to his west and south, including the strip now in dispute. A suit was brought to enforce or terminate a contract whereby Roche was to purchase from Wight a right of way over the property in question. Title to the property was never to change hands, and when Roche failed to pay the contract price the court cancelled the contract.

That contract also required Roche to build a fence on the location of the fence

defendant tore down, to protect Wight's property in section 23 from trespassing cattle. The Court ordered the fence built, and while there is no evidence as to when it was built, there was a fence constructed before 1933. This same contract required that Wight build a fence on the north side of the right of way, on the section line, which obviously he did not do. It is clear from this earlier case, however, that the fence was built not to mark the boundary of the right of way but to prevent cattle from trespassing onto Wight's property.

Despite this earlier court case, Roche in 1926 quitclaimed to one P. C. Peterson not only his holdings in section 14 but also the strip in section 23 over which the right of way was to run. In an affidavit in 1954, Roche claimed he had never owned any interest in property in section 23 and had not intended to convey any. Roche's property came through one Ervin Peterson and Ronald Petersen to plaintiff but her deed of 1973 did not include the property in section 23.

Later Wight's widow sold the north half of the north half of section 23 to Dunn, *supra*, who in 1942 conveyed it to Newman, *supra*, from whom defendant is purchasing on contract. All the deeds conveying the property in section 23 specify a right of way on the north for a public road. Mrs. Wight also sold Dunn property in section 14 in 1932, which plaintiff ultimately acquired. Plaintiff's deed to this property (which had been sold to Hunsaker in 1937, and to Petersen in 1959) did not include property in section 23, and specified a right of way only on the west side of the property.

Plaintiff claims that she acquired title to the two-rod strip between the section line and the fence line under the doctrine of boundary by acquiescence. The District Court dismissed plaintiff's complaint, no cause of action, making the following findings of fact:

(a) the fence was built on defendant's property by defendant's predecessors, two rods south of the north line of section 23, in anticipation of a public road;

(b) the expected road was the subject of earlier litigation, but title had not been expected to change;

(c) the fence was built to protect defendant's property against trespassing livestock;

(d) plaintiff's predecessors knew the fence was on defendant's property and was not a boundary;

(e) looking at the property, it is clear that the fence is not the boundary;

(f) the fence was not intended as a boundary, and there was never any acquiescence by the parties or their predecessors that the fence was the boundary;

(g) the fence of defendant's property was defendant's property which he could remove at will.

The District Court concluded from these findings that the elements for boundary by acquiescence were not met.

The doctrine of boundary by acquiescence grew out of the related doctrine of boundary by agreement.[1] *Florence v. Hiline Equipment Co.*, Utah, 581 P.2d 998 (1978) defined both doctrines and stated that boundary by agreement falls somewhere between adverse possession and estoppel.

Boundary by acquiescence has long been recognized in Utah. It was first mentioned in *Suitzgable v. Worseldine*, 5 Utah 315, 15 P. 144 (1887) but was held inapplicable in that case. The first Utah application of the principle was in *Holmes v. Judge*, 31 Utah 269, 87 P. 1009 (1906). While each case starts with the presumption that the parties claim all the property described in their deeds, *Brown v. Milliner*, 120 Utah 16, 232 P.2d 202 (1951), each case must be determined by its own facts and

where the boundary is open, and visibly marked by monuments, fences, or buildings, and is knowingly acquiesced in for a long term of years, the law will imply an agreement fixing the boundary as located. *Holmes v. Judge*, at 87 P. 1014.

1. In the view of Robert Hill in *Boundaries by Agreement and Acquiescence in Utah*, 1975 Utah L.Rev. 221, these doctrines are merging in Utah.

■ The purpose of the rule is stability in boundaries, repose of titles, and the prevention of litigation; and to promote these purposes the doctrine has been applied many times since *Holmes v. Judge*, and in varying forms. The test for application most frequently used by the Court in recent years is the four-point formula enunciated in *Fuoco v. Williams (Fuoco I)*, 15 Utah 2d 156, 389 P.2d 143 (1964). The four elements which must be proven are:

(1) Occupation up to a visible line marked definitely by monuments, fences, or buildings and

(2) acquiescence in the line as the boundary

(3) for a long period of years

(4) by adjoining landowners.

We need only address the second element of acquiescence in the line as a boundary, and the concomitant matter of intent for a boundary, as a resolution thereof is dispositive.

■ Where there is no proof of acquiescence in the line as the boundary, there can be no boundary by acquiescence. And a failure to meet any *one* of the elements of the doctrine defeats the boundary. *Florence v. Hiline Equipment Co., supra.* While *Holmes v. Judge, supra,* and *Nelson v. Da Rouch,* 87 Utah 457, 50 P.2d 273 (1935) required that the parties "knowingly acquiesce," the later cases have found acquiescence where there is "mutual recognition" of the line as the boundary. *Tripp v. Bagley,* 74 Utah 57, 276 P. 912, 69 A.L.R. 1417 (1928); *Brown v. Milliner, supra; Hummel v. Young,* 1 Utah 2d 237, 265 P.2d 410 (1953); *Harding v. Allen,* 10 Utah 2d 370, 353 P.2d 911 (1960); *Wright v. Clissold,* Utah, 521 P.2d 1224 (1974). However, *Brown v. Milliner,* stated that sharing the use of one's property is not the equivalent of a disclaimer of ownership; and failure to affirmatively claim to the true line was not acquiescence in *Glenn v. Whitney,* 116 Utah 267, 209 P.2d 257 (1949) and *Ringwood v. Bradford,* 2 Utah 2d 119, 269 P.2d 1053 (1954). Thus, here the District Court could properly determine in this case that the plaintiff's occupation to the fence without interference was not sufficient to establish defendant's acquiescence in the fence as a boundary.

■ According to *Fuoco v. Williams (Fuoco II)*, 18 Utah 2d 282, 421 P.2d 944 (1966), the parties must know of the existence of the line as the boundary to establish acquiescence. *Wright v. Clissold, supra,* also required this knowledge and mutual recognition of the boundary; but *King v. Fronk,* 14 Utah 2d 135, 378 P.2d 893 (1963) considered a visible, persisting boundary as evidence of acquiescence.

In this case there was a visible boundary, persisting for 40 years. Defendant's predecessor testified, though, that he never acquiesced in the fence as a boundary, and that he did not consider the fence was on the boundary. The District Court found, as noted *supra,* that there was no acquiescence, and there is credible, substantial evidence to support this finding, as defendant and his predecessors did not recognize the fence as a boundary.

*Holmes v. Judge, supra,* and the cases following it held that where a fence or other monument which was claimed to mark a boundary is not actually intended to be a boundary, but is erected for some other purpose, the parties can claim to the true boundary line, and there can be no boundary by acquiescence. Thus, in *Ringwood v. Bradford, supra,* the fence was erected as a barrier to control sheep, and no boundary was established. *Wright v. Clissold, supra,* also refused to grant boundary by acquiescence where the fence was erected as a barrier, although the party claiming the property had cultivated up to the fence for over 20 years.

In this case the Court found that the fence was erected as a barrier to control livestock, not as a boundary, and was purposely offset so as to be south of the expected road. In addition, the disputed fence was built by a common owner. Both

*Home Owner's Loan Corp. v. Dudley,* 105 Utah 208, 141 P.2d 160 (1943) and *Wright v. Clissold, supra,* held that a fence could not be intended as a boundary if it was built by a common owner, and not to settle a dispute. A fence built as a barrier by a common owner was permitted to mark a boundary, once ownership was split, in *Baum v. Defa,* Utah, 525 P.2d 725 (1975); however, the Court was justified in finding that there was no evidence here that the fence was intended by the parties or their predecessors to mark the boundary between them once they had acquired the property from the common owner.

Affirmed, costs to defendant.

CROCKETT, C. J., and MAUGHAN, HALL and STEWART, JJ., concur.