2024 UT App 37

## THE UTAH COURT OF APPEALS

B.G.T.S. PROPERTIES, LLC,
Appellant,
*v.*
BALLS BROTHERS FARM, LLC,
Appellee.

Opinion
No. 20220523-CA
Filed March 21, 2024

First District Court, Logan Department
The Honorable Brian G. Cannell
No. 210100087

James C. Jenkins, Attorney for Appellant

Daniel K. Dygert, Attorney for Appellee

JUDGE JOHN D. LUTHY authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and
DAVID N. MORTENSEN concurred.

LUTHY, Judge:

¶1    This case addresses the "mutual acquiescence" element of the doctrine of boundary by acquiescence as well as the effect of a conveyance of title from one who obtains title through boundary by acquiescence. B.G.T.S. Properties, LLC (BGTS) and Balls Brothers Farm, LLC (Balls Brothers) are the owners of neighboring record properties in Cache County. Beginning in at least 1963, BGTS's predecessors in interest occupied a strip of land between their northern record boundary and a fence line (the Fence Line) located within Balls Brothers's record property. BGTS sued to quiet title to a portion of that strip (the Disputed Parcel), alleging that title had passed to BGTS through the doctrine of boundary by

acquiescence. Balls Brothers filed a quiet title counterclaim, alleging that the disputed strip had not passed to BGTS or BGTS's predecessors in interest. The parties then filed cross-motions for summary judgment. The district court denied BGTS's motion and granted Balls Brothers's motion, concluding that BGTS had produced insufficient evidence to support the mutual acquiescence element of boundary by acquiescence.

¶2     We conclude that the district court applied an incorrect legal standard and erred in its determination that BGTS had produced insufficient evidence to support the mutual acquiescence element of its boundary by acquiescence claim. We therefore reverse the court's ruling on mutual acquiescence. We nevertheless affirm the court's ultimate denial of BGTS's summary judgment motion and grant of Balls Brothers's summary judgment motion on the alternative ground that BGTS did not satisfy its burden to produce evidence that, even if a predecessor in interest to BGTS acquired title to the strip of land through boundary by acquiescence, BGTS obtained title to the Disputed Parcel from its predecessor.[1]

---

1. Our ultimate affirmance of the district court's summary judgment ruling does not require us to address the issue of mutual acquiescence. Ordinarily, we avoid addressing issues that are unnecessary to our resolution of the appeal. *See, e.g., McBroom v. Schmunk (In re Estate of Willey)*, 2016 UT 53, ¶ 16, 391 P.3d 171 (declining to rule on an issue "not necessary to the disposition of [the] case"). But where, as here, we perceive a real possibility of subsequent litigation between the same parties on an issue that has been fully briefed, we will not hesitate to correct an erroneous district court ruling on that issue so as to avoid the possibility that the erroneous ruling will stand as res judicata in a subsequent action.

BACKGROUND

¶3    Balls Brothers's record parcel is immediately to the north of BGTS's record parcel. The Fence Line runs east-to-west through the southern portion of Balls Brothers's record property and has existed there since at least 1963. During that time, BGTS and its predecessors in interest have occupied the strip of land that lies north of BGTS's record boundary and up to the Fence Line at a distance of approximately twenty feet. Also during that time, Balls Brothers and its predecessors have not used or occupied that strip of land.

¶4    In April 1999, BGTS's predecessor "recorded a Record of Survey that defined the boundaries for a 6.12 acre parcel that bordered the Balls Brothers property on the south." The Record of Survey identified the northern record boundary of the 6.12-acre parcel and the Fence Line "as being separate and distinct."

¶5    In August 2005, the co-owners of the parcel ("Seller" and two other individuals) subdivided it, creating Lots 1 and 2 of the Avalon Lot Split Subdivision. Lot 1 consists of the western portion of the record parent parcel, and Lot 2 consists of the eastern portion of the record parent parcel. The legal description of Lot 1 on the subdivision plat is a metes and bounds description that does not include the Disputed Parcel, which lies directly north of Lot 1, or any other portion of the strip of land between the northern record boundary of the Avalon Lot Split Subdivision and the Fence Line. The visual depiction of Lot 1 on the subdivision plat also does not include the Disputed Parcel as part of the lot.

¶6    In September 2005, Seller conveyed Lot 1 of the Avalon Lot Split Subdivision to BGTS by a warranty deed that described the property being transferred as "LOT 1 AVALON LOT SPLIT SUBDIVISION PLAT AS SHOWN BY THE OFFICIAL PLAT FILED . . . IN THE OFFICE OF THE RECORDER OF CACHE

COUNTY, UTAH." In November 2019, BGTS conveyed Lot 1 to itself by a warranty deed that also described the land being conveyed as "Lot 1, Avalon Lot Split Subdivision as shown by the official plat filed . . . in the office of the Recorder of Cache County, Utah."

¶7      In 2020, Balls Brothers sought and obtained the annexation of its record property—including the Disputed Parcel—into the town of Paradise. It then subdivided its record property into Sam's Town Subdivision Phase 3. The legal description of Lot 19 of Sam's Town Subdivision Phase 3 contains the Disputed Parcel. In December 2020, Balls Brothers sent a letter to BGTS, asking that it remove the fence. BGTS asserts that it objected and informed Balls Brothers of its claim of boundary by acquiescence. Balls Brothers then removed a portion of the fence.

¶8      In 2021, BGTS sued to quiet title to the Disputed Parcel. It alleged that the parties' respective predecessors in interest had mutually acquiesced to the Fence Line as the property boundary for at least twenty years after BGTS's predecessors began occupying the Disputed Parcel and, therefore, that title for the Disputed Parcel had passed to BGTS through the doctrine of boundary by acquiescence.[2] Balls Brothers filed a quiet title

---

2. BGTS also asserted trespass to real property. The district court ruled that its grant of summary judgment defeating BGTS's claim of boundary by acquiescence "necessarily resolve[d]" the trespass claim because BGTS cannot sustain a trespass claim where it "is not the lawful owner of the property at issue." Because we ultimately affirm the district court's order denying summary judgment to BGTS and granting summary judgment to Balls Brothers, and because BGTS does not challenge the court's order on the trespass claim, we affirm the dismissal of the trespass claim as well.

counterclaim, alleging that the disputed strip had not passed to BGTS or BGTS's predecessors in interest.

¶9    During discovery, BGTS deposed Balls Brothers's designated representative (Representative). Representative's grandparents owned the property in 1963, and Representative's mother and aunt later owned it before Balls Brothers took title to the property. Representative did not know when the Fence Line was established, but he agreed that it existed before his grandparents' deaths in the mid to late 1980s. Representative declared that he was not aware of any lawsuit filed by his grandparents, mother, or aunt to determine the boundary between the properties now owned by BGTS and Balls Brothers. He indicated that the first time he objected to the Fence Line was through the letter he sent BGTS in December 2020. He also testified that, to his knowledge, neither Balls Brothers nor any of its predecessors farmed or otherwise occupied any portion of the Disputed Parcel.

¶10    Also during discovery, BGTS provided a declaration from a long-time resident of Paradise (Resident). Resident declared that around 1963 he became aware of the Fence Line between the properties and that the Fence Line existed in the same location since then. He further declared that BGTS's predecessors used the Disputed Parcel for grazing cattle and for agricultural purposes up to the Fence Line since about 1963. He said he did not know of any instance where BGTS's predecessors occupied the land north of the Fence Line or of any instance where Balls Brothers's predecessors occupied the land south of the Fence Line.

¶11    BGTS moved for summary judgment on its quiet title claim. Balls Brothers then also moved for summary judgment, asserting that "BGTS has not and cannot prove by clear and convincing evidence that title to the [Disputed Parcel] transferred by operation of law through the doctrine of boundary of acquiescence."

¶12   The district court agreed with Balls Brothers that BGTS had not proved the mutual acquiescence element of its boundary by acquiescence claim. In its decision on the cross-motions, it focused solely on the period from 1963 to 1983 and said:

> [BGTS's] position seems to be that the existence of a fence for a long time coupled with occupation is sufficient to find boundary by acquiescence. The Court, upon reviewing the case law cited herein above, does not agree with this proposition, where Utah case law makes it clear that occupation and mutual acquiescence are distinct elements with different requirements and a mere fence line is not enough.

The case law the court cited in support of its decision included *Brown v. Jorgensen*, 2006 UT App 168, ¶ 16, 136 P.3d 1252 ("The mere fact that a fence happens to be put up and neither party does anything about it for a long period of time will not establish it as the true boundary." (cleaned up)), and *Hales v. Frakes*, 600 P.2d 556, 559 (Utah 1979) ("[P]laintiff's occupation to the fence without interference was not sufficient to establish defendant's acquiescence in the fence as a boundary.").

¶13   The district court acknowledged that BGTS had "put[] forward [Resident's] declaration as evidence of mutual acquiescence," but it cited *Lundahl Farms LLC v. Nielsen*, 2021 UT App 146, 504 P.3d 735, for the proposition that (in the district court's words) "assumptions and speculation alone are insufficient grounds to make a finding that an element of boundary by acquiescence is met." The court then determined that Resident's declaration did not provide "sufficient evidence to find that there was mutual acquiescence between the parties for the full period of time between 1963–1983" because Resident was "a third-party observer and not a party in interest or prior owner

of the real property at issue." The court reasoned that "[a]t most, [Resident's] declaration provides some evidence of occupation, but it does not provide any specific facts that show mutual acquiescence between the parties." Accordingly, the court determined that "[t]his evidence, even when coupled with . . . Balls Brothers's admissions of lack of occupation beyond the fence, is simply not enough to meet the clear and convincing evidentiary requirement" to prove mutual acquiescence. Thus, the court found that "as a matter of law, there was not mutual acquiescence between the predecessor parties" and that, "as a result, [BGTS's] boundary by acquiescence claim fails." The court therefore denied BGTS's summary judgment motion and granted Balls Brothers's summary judgment motion. BGTS appeals.

## ISSUES AND STANDARD OF REVIEW

¶14   BGTS argues that the district court erred in granting summary judgment in favor of Balls Brothers and denying BGTS's summary judgment motion. Specifically, BGTS contends that the district court applied the wrong legal standard when it determined that the uncontroverted evidence did not prove the element of mutual acquiescence. In response, Balls Brothers asserts, among other things, that even if BGTS's predecessor in interest obtained the Disputed Parcel through boundary by acquiescence, the district court's summary judgment ruling should be affirmed because BGTS has produced no evidence that it obtained title to the Disputed Parcel from its predecessor. We review the district court's conclusions of law on the issue of boundary by acquiescence for correctness. *See RHN Corp. v. Veibell*, 2004 UT 60, ¶ 22, 96 P.3d 935. And "[w]e review the district court's grant of summary judgment for correctness, according no deference to that court's legal conclusions." *Oxendine v. Overturf*, 1999 UT 4, ¶ 7, 973 P.2d 417.

ANALYSIS

I. Mutual Acquiescence

¶15    To establish boundary by acquiescence, a claimant must show the following:

> (1) a visible line marked by monuments, fences, buildings, or natural features treated as a boundary; (2) the claimant's occupation of his or her property up to the visible line such that it would give a reasonable landowner notice that the claimant is using the line as a boundary; (3) mutual acquiescence in the line as a boundary by adjoining landowners; (4) for a period of at least 20 years.

*Anderson v. Fautin*, 2016 UT 22, ¶ 31, 379 P.3d 1186. "To prevail, a claimant must prove each element by clear and convincing evidence." *Lundahl Farms LLC v. Nielsen*, 2021 UT App 146, ¶ 42, 504 P.3d 735 (cleaned up).

¶16    In *Anderson v. Fautin*, 2016 UT 22, 379 P.3d 1186, the Utah Supreme Court explained that this state's early case law on the doctrine of boundary by acquiescence was unclear because it did not "separate the doctrine of boundary by acquiescence from the doctrine of boundary by agreement." *Id.* ¶ 12. The court explained that the law had "treated [boundary by acquiescence] as a subsidiary remedy concerned with implying a boundary agreement where no direct evidence of an agreement was available." *Id.* ¶ 20. Thus, the court said, it had begun "to require [for boundary by acquiescence claims] evidence from which [it] could infer that a nonclaimant expressly consented to treat a visible line as a boundary." *Id.* ¶ 18. But the court acknowledged that this approach "distorted the notion of acquiescence, which merely requires passive assent, to something more analogous to acceptance in the contract context, which typically requires an

affirmative act." *Id.* (cleaned up). In other words, the failure to adequately distinguish boundary by acquiescence from boundary by agreement had yielded the "unfortunate consequence[]" of "distort[ing] the mutual acquiescence requirement [of boundary by acquiescence] by focusing on evidence from which to infer that a nonclaimant had consented to the location of a boundary at a visible line." *Id.* ¶ 12.

¶17    The court then clarified that it had since "abandoned" this focus: "Our more recent approach to boundary by acquiescence cases is similar to the way we approach adverse possession disputes. Under our current approach, . . . the mutual acquiescence element merely requires silence or indolence by a nonclaimant who may or may not occupy his or her property." *Id.* ¶¶ 20–21. Under this new approach, "the mutual acquiescence element roughly corresponds to the 'continuous for the statutory period' requirement" of adverse possession. *Id.* ¶ 26 (cleaned up). Accordingly, "[s]imilar to a titleholder in relation to an adverse possessor, a nonclaimant can object to the boundary at any time within the twenty-year period to prevent the claimant's occupancy from maturing into title," *id.*, but "[c]onsonant with adverse possession jurisprudence, . . . [t]he nonclaimant need not provide express consent, but can acquiesce through inaction," *id.* ¶ 27.

¶18    The *Anderson* court discussed certain cases indicating this shift. *Id.* ¶¶ 22–24. It noted that in *Harding v. Allen*, 353 P.2d 911 (Utah 1960), *overruled on other grounds as recognized by Wood v. Myrup*, 681 P.2d 1255 (Utah 1984), notice of the claimant's occupancy "coupled with [the nonclaimant's] failure to dispute the boundary showed acquiescence." *Anderson*, 2016 UT 22, ¶ 22. The court then observed that after *Harding*, its standard was "that silence or indolence signaled acquiescence." *Id.* ¶ 24. The court also pointed to *Lane v. Walker*, 505 P.2d 1199 (Utah 1973), in which it "defined 'acquiescence' as more nearly synonymous with 'indolence,' or 'consent by silence.'" *Anderson*, 2016 UT 22, ¶ 24

(cleaned up). "Thus," the *Anderson* court concluded, "a do-nothing history on the part of the parties concerned results in putting to rest titles to property." *Id.* (cleaned up).

¶19   The *Anderson* court also identified the benefits associated with this shift, saying that "treating boundary by acquiescence claims as more akin to adverse possession claims permits the former doctrine to minimize litigation and promote stability in landownership" and "fill[s] a small but important gap in our boundary dispute law." *Id.* ¶ 21 (cleaned up). The court further explained that "[w]ithout boundary by acquiescence, a claimant who cannot establish either a boundary by agreement claim or an adverse possession claim may be without legal remedy." *Id.* ¶ 28. Specifically, "[u]nder boundary by agreement, a claimant needs to marshal evidence of an express parol agreement to alter a disputed boundary line," and "[b]oundary by acquiescence addresses those cases where there is no evidence of an express agreement, perhaps because the boundary line was established many years prior by deceased landowners and there are no witnesses to provide competent evidence of a parol agreement." *Id.* Additionally, "under adverse possession, a claimant must pay taxes on the disputed property," and "Utah's adverse possession statute cannot adequately address boundary disputes because [a party] who possesses land for a long period without having legal title, but believing [it] is the actual owner, is unlikely to think of procuring a tax description in order to pay taxes on the land because [it] will think that [it] is already paying taxes on it." *Id.* (cleaned up). Therefore, "[b]y treating boundary by acquiescence claims as similar to, but distinct from, adverse possession claims, we provide a legal remedy to those landowners who have relied on a boundary line for a long period of time but cannot mount evidence of an agreement or evidence to show they paid taxes on the property up to the visible line." *Id.* ¶ 29.

¶20   This is precisely the situation here. Neither party has been able to produce evidence as to the state of mind of the landowners

in 1963 with respect to the Fence Line. Nor do they need to. The doctrine of boundary by acquiescence exists for the purpose of addressing just such facts as those before us. BGTS provided evidence that its predecessors occupied the Disputed Parcel up to the Fence Line from 1963 on. Resident declared that the Fence Line existed by about 1963 and that BGTS's predecessors in interest occupied the Disputed Parcel from that time, using it for cattle grazing and agricultural purposes. Thus, Balls Brothers's predecessors were on notice that BGTS's predecessors were occupying the Disputed Parcel and using the Fence Line as the property boundary beginning around 1963. Once BGTS presented uncontradicted evidence of its predecessors' twenty-year occupation of the Disputed Parcel and treatment of the Fence Line as the boundary, the element of mutual acquiescence was satisfied if Balls Brothers's predecessors remained silent during that period. *See id.* ¶ 24.

¶21   And the evidence is undisputed on this point as well. Representative testified that he was not aware of any related lawsuit filed by his grandparents, mother, or aunt and that the first time he objected to the Fence Line was through the letter he sent BGTS in December 2020. Moreover, neither party presented evidence that an objection was raised between 1963 and 1983. As already observed, "a do-nothing history on the part of the parties concerned results in putting to rest titles to property," *id.* (cleaned up), and here the parties and their predecessors did nothing to dispute the Fence Line as the property boundary between 1963 and 1983.[3] By failing to object during that period—in other words,

_____

3. Balls Brothers asserts that mutual acquiescence is not determined by looking only to the twenty-year period after the construction of the fence. It argues that, instead, events beginning in 1999 are also relevant to this issue. However, when all elements of boundary by acquiescence are met, title automatically passes without judicial involvement. *See Q-2 LLC v. Hughes*, 2016 UT 8,

(continued…)

by choosing silence—Balls Brothers's predecessors displayed their acquiescence to the Fence Line as the property boundary. *Id.*

¶22 Furthermore, while Representative's admission that Balls Brothers's predecessors never occupied the Disputed Parcel is not required to satisfy either the element of occupation by the claimant or that of mutual acquiescence, *see id.* ¶ 30, it further evinces Balls Brothers's predecessors' assent to the Fence Line as the property boundary. Balls Brothers's predecessors were not only silent with respect to the Fence Line, but they chose to farm the land north of the Fence Line and to not use the land south of the Fence Line at all. This uncontroverted reality provides additional evidence that Balls Brothers's predecessors assented to the use of the Fence Line as the property boundary. *See RHN Corp. v. Veibell*, 2004 UT 60, ¶ 24, 96 P.3d 935 ("To acquiesce means to recognize and treat an observable line, such as a fence, as the boundary dividing the owner's property from the adjacent landowner's property." (cleaned up)).

¶23 In finding that BGTS's evidence was nevertheless legally insufficient to establish mutual acquiescence, the district court looked only to Resident's declaration and disregarded it—for purposes of the element of mutual acquiescence—because Resident did "not provide any specific facts that show mutual acquiescence between the parties," by which the court apparently meant that Resident did not provide evidence of Balls Brothers's

---

¶ 18, 368 P.3d 86 ("Title is vested as soon as the elements are satisfied just as if title had been transferred by deed . . . ." (cleaned up)). Because BGTS alleges that title to the Disputed Parcel passed in 1983, we limit our mutual acquiescence inquiry to the period of 1963 to 1983.

Balls Brothers also asserts an equitable estoppel argument based on events beginning in 1999. Because we ultimately affirm the grant of summary judgment in favor of Balls Brothers, we do not address Balls Brothers's estoppel argument.

predecessors' affirmative consent to the Fence Line as the boundary.[4] However, this runs counter to our supreme court's holding that evidence suggesting a nonclaimant's affirmative consent to the location of a visible boundary line is no longer required to satisfy this element. *See Anderson v. Fautin*, 2016 UT 22, ¶ 21, 379 P.3d 1186.

¶24 The district court relied on language from *Brown v. Jorgensen*, 2006 UT App 168, 136 P.3d 1252, stating that "the mere fact that a fence happens to be put up and neither party does anything about it for a long period of time will not establish it as the true boundary." *Id.* ¶ 16 (cleaned up). The court also cited *Hales v. Frakes*, 600 P.2d 556 (Utah 1979), as supporting this proposition. In *Hales*, our supreme court indeed said that the district court "could properly determine . . . that the plaintiff's occupation to [a] fence without interference was not sufficient to establish defendant's acquiescence in the fence as a boundary." *Id.* at 559. Likewise, in *Jorgensen* we said that because the claimants

---

4. The district court also disregarded Resident's declaration because Resident was "a third-party observer and not a party in interest or prior owner of the real property at issue" and because "assumptions and speculation alone are insufficient grounds to make a finding that an element of boundary by acquiescence is met." The court erred in these respects. In *Lundahl Farms LLC v. Nielsen*, 2021 UT App 146, 504 P.3d 735, this court stated that evidence by third parties regarding such topics as "conditions present throughout [their] lifetime[s], including the existence of certain fencing and [the landowners'] uses of the property" may be relied on "in speaking to mutual acquiescence of the then-owners" of the land. *Id.* ¶ 67. Resident declared his awareness of the Fence Line and his observations regarding the landowners' use of the land. These firsthand observations are neither assumptions nor speculation. Accordingly, his declaration presents evidence that is rightly considered in support of a claim for boundary by acquiescence. *See id.*

there had "never actually communicated their belief to [the record property owner], either by word or action," that a fence that was not on the record boundary "was the property line," the claimants' boundary by acquiescence claim failed. 2006 UT App 168, ¶ 16. But on this point, *Jorgensen*, *Hales*, and any other case suggesting that evidence of a property owner's affirmative consent is needed to prove the mutual acquiescence element of boundary by acquiescence must be classed among the "early cases" that "looked for evidence of consent" that *Anderson* overruled when it "abandoned the implied agreement approach to boundary by acquiescence disputes." 2016 UT 22, ¶¶ 17, 19–20.

¶25   Because in this case there is no genuine dispute that BGTS's predecessors in interest occupied the Disputed Parcel and treated the Fence Line as the boundary from 1963 to 1983 and that Balls Brothers's predecessors in interest remained silent during the same time, the element of mutual acquiescence is satisfied as a matter of law. The district court erred by applying an outdated legal standard and finding otherwise.[5]

## II. Conveyance of Title

¶26   Despite our foregoing conclusion, we affirm the district court's grant of summary judgment in favor of Balls Brothers and denial of summary judgment to BGTS. We do so on an alternative ground: that BGTS failed to carry its burden to produce evidence that the Disputed Parcel was conveyed to it. In responding to BGTS's motion for summary judgment and in making its own motion for summary judgment, Balls Brothers argued that

---

5. The district court expressly did not "determine whether the remaining required elements [of boundary by acquiescence] have been satisfied," and we do not reach that question in the first instance. *See R.O.A. Gen. Inc. v. Salt Lake City Corp.*, 2022 UT App 141, ¶ 39, 525 P.3d 100 ("We are mindful that we are a court of review, not of first view . . . ." (cleaned up)).

because BGTS produced no evidence that, even if legal title to the Disputed Parcel had passed to Seller, Seller had passed that title to BGTS, BGTS's boundary by acquiescence claim fails. We agree.

¶27    In *Brown v. Peterson Development Co.*, 622 P.2d 1175 (Utah 1980), the Utah Supreme Court addressed the conveyance of legal title obtained through the doctrine of boundary by acquiescence. There, a group of claimants asserted boundary by acquiescence where their predecessors in interest had farmed a disputed piece of property up to a visible fence line that had been treated as a boundary for decades. *Id.* at 1176–77. Before the claimants obtained their properties, however, their predecessors' parcel was subdivided. *Id.* at 1177. A survey conducted in connection with the preparation of the subdivision plat revealed that the old fence line was approximately seventy feet east of the record boundary of the property to be subdivided. *Id.* On the subdivision plat, the "surveyed line was designated as the easterly boundary line of the [subdivision]," leaving the disputed "strip of land between the east subdivision line and the old fence" outside the plat. *Id.* Each claimant then received from their predecessors both (1) a deed to a subdivision lot and (2) a quitclaim deed to a corresponding portion of the disputed strip between the subdivision and the old fence. *Id.* When our supreme court reviewed the claimants' boundary by acquiescence claims, it said:

> The fact that the [claimants] had notice of the actual lot boundaries before buying and closing their lot purchases would have been fatal to their action if they had not received a conveyance of the legal title to the disputed strip of land by means of quitclaim deeds from the former owners of it. The later quitclaim deeds passed the legal title to them. The title lost by defendants' predecessors by virtue of the operation of the doctrine of boundary by acquiescence did not revert to the defendants nor to the former owners of the record title when the

surveyors established the record title line . . . . The legal title to the disputed strip remained in [the party who satisfied the elements of boundary by acquiescence] or [that party's] grantee or successor in interest, from whom the [claimants] received their title.

*Id.* at 1178.

¶28　Our court addressed this issue further in *Pioneer Home Owners Ass'n v. TaxHawk Inc.*, 2019 UT App 213, 457 P.3d 393, *cert. denied*, 466 P.3d 1073 (Utah 2020). There, the district court had assumed for purposes of a motion for summary judgment that the claimant's predecessor in interest had satisfied the elements of boundary by acquiescence, but the district court had ruled that a quitclaim deed from the predecessor in interest to the claimant was "a necessary element of boundary by acquiescence" and that the claimant's case failed because the claimant had not obtained a deed to the disputed strip of property. *Id.* ¶¶ 26–27. The district court "determined that title to the disputed property was never transferred to [the claimant] when [the claimant] never received a deed to the [disputed property] from a former owner." *Id.* ¶ 27 (cleaned up).

¶29　There, we did "not agree with the district court's apparent presumption that, in the abstract, legal title acquired through boundary by acquiescence may be transferred to a successor-in-interest *only* through deed." *Id.* ¶ 35. Instead, we acknowledged that "title acquired through boundary by acquiescence may be transferred to a successor through means apart from a deed," "including by grant, descent, adverse possession, or some other operation of law." *Id.* (cleaned up); *see also Q-2 LLC v. Hughes*, 2016 UT 8, ¶ 18, 368 P.3d 86 ("Because title is vested as soon as the elements are satisfied just as if title had been transferred by deed, title remains vested until it passes by grant, descent, adverse possession, or some other operation of law." (cleaned up)).

However, relying on *Peterson Development* and *Q-2 LLC v. Hughes*, 2016 UT 8, 368 P.3d 86, we continued,

> Nevertheless, even if transfer by deed may not be the exclusive vehicle through which title acquired through boundary by acquiescence may be transferred, it is clear that *some* vehicle of title transfer as between the vested title owner and a potential successor-in-interest must occur to establish the successor's entitlement to the disputed property.

*Pioneer Home Owners Ass'n*, 2019 UT App 213, ¶ 36. "In other words," we said, "even if [the claimant] was perhaps not strictly required to establish its ownership of the [disputed property] through deed, for purposes of summary judgment it *was* required to put forth evidence establishing its acquisition of the [disputed property] through some other means." *Id.* Because "the only evidence before the court to establish the essential elements of [the claimaint's] claims was (1) the [predecessor's] alleged legal title to the [disputed property] and (2) [the claimant's] current possession, which both parties essentially agreed was insufficient on its own to establish title through boundary by acquiescence," we affirmed the grant of summary judgment against the claimant. *Id.* ¶¶ 38–39.

¶30    Balls Brothers asserts that we should reach the same result here, and we agree. Even if legal title to the Disputed Parcel passed through boundary by acquiescence to one of BGTS's predecessors in interest in 1983, BGTS has not provided evidence that it has acquired that title. Like the claimant in *Pioneer Home Owners Ass'n*, BGTS has not provided evidence beyond such predecessors' satisfaction of the elements of boundary by acquiescence and BGTS's own occupation of the Disputed Parcel, which occupation alone BGTS has not argued is sufficient to establish title. *Id.* ¶ 38. And here, like there, this is not enough. *Id.*

¶31    Critically, BGTS has failed to provide evidence that Seller, if he had acquired legal title to the Disputed Parcel, conveyed legal title to BGTS, given that, like in *Peterson Development*, a survey and subdivision plat revealed the record boundary line before BGTS obtained its property from Seller. *See* 622 P.2d at 1177. In April 1999, BGTS's predecessor recorded a survey indicating that the Fence Line did not align with the northern record boundary. Seller and his co-owners subsequently subdivided the parent parcel, and Seller conveyed Lot 1 to BGTS.[6] We have not been presented with evidence of Seller's intent regarding the disputed strip, and BGTS's occupation of the Disputed Parcel is inadequate. Without additional evidence, we cannot know whether—if Seller held legal title—Seller intended

---

6. BGTS argues in supplemental briefing on this question that "just like in [*Peterson Development*], nothing about using the record boundaries in [the] . . . subdivision causes title to the Disputed Parcel to 'revert' to [Balls Brothers] or its predecessors." *See Brown v. Peterson Dev. Co.*, 622 P.2d 1175, 1178 (Utah 1980). We agree— *Peterson Development* confirms this point. However, this reality does not aid BGTS. Although it is true that, assuming legal title had passed to BGTS's predecessors, subsequently subdividing the parent parcel and conveying only a portion of it to BGTS would not have the effect of transferring title to the disputed strip back to Balls Brothers, such a course would simply leave any unconveyed portion of the disputed strip with BGTS's last predecessor who received that legal title. Accordingly, BGTS is mistaken when it further asserts that "[h]ere, just as in [*Peterson Development*], 'legal title to the disputed strip remained' in BGTS through its predecessors in interest." Title remaining in BGTS's predecessor is not synonymous with title "remaining" in BGTS. Only if BGTS first *acquires* title through "grant, descent, adverse possession, or some other operation of law," *Pioneer Home Owners Ass'n v. TaxHawk Inc.*, 2019 UT App 213, ¶ 35, 457 P.3d 393 (cleaned up), *cert. denied*, 466 P.3d 1073 (Utah 2020), can such title then *remain* in BGTS.

the disputed strip to be attached in its entirety to Lot 1, in its entirety to Lot 2, to both Lot 1 and Lot 2 in portions aligning with the north-to-south boundary between the lots (with the Disputed Parcel going to BGTS), or to neither lot.

¶32    Neither the legal description of Lot 1 on the subdivision plat nor the legal description in BGTS's warranty deed included the Disputed Parcel. BGTS asserts that, "[w]hile the legal description of Lot 1 in the warranty deed . . . did not expressly include a description of the Disputed Parcel, the conveyance was of [the predecessor's] entire interest in the property." But this cannot be true on these facts. The parent parcel was subdivided after the survey, and the conveyance of Lot 1 was not of the co-owners' "entire interest" in the parent parcel because they did not convey Lot 2—or, without further evidence to the contrary, the Disputed Parcel or any other part of the disputed strip—to BGTS. The deed clearly states that it was conveying Lot 1 "as shown by the official plat," and the plat clearly indicates that the northern boundary of Lot 1 is the record boundary line, not the Fence Line. Thus, under the circumstances of this case, the "fact that [BGTS] had notice of the actual lot boundaries before buying and closing" its lot purchase is "fatal" to its action because it has produced no evidence that it "received a conveyance of the legal title to the [Disputed Parcel] by means of [a] quitclaim deed[]" or some other transfer. *Id.* at 1178; *see also Pioneer Home Owners Ass'n v. TaxHawk Inc.*, 2019 UT App 213, ¶ 36, 457 P.3d 393, *cert. denied*, 466 P.3d 1073 (Utah 2020).

¶33    Without deciding the issue, we acknowledge that there would have been a colorable argument for a different result if BGTS had obtained title to the entire record parcel owned by its predecessor after the elements of boundary by acquiescence were allegedly met. We also acknowledge, without deciding the issue, that there would also have been a colorable argument for a different result if BGTS had received title to Lot 1 before anyone's discovery of a discrepancy between the record boundary and the

visible fence line that was being treated as a boundary. *Cf. RHN Corp. v. Veibell*, 2004 UT 60, ¶ 31, 96 P.3d 935 ("Once adjacent landowners have acquiesced in a boundary for a long period of time, the operation of the doctrine of boundary by acquiescence is not vitiated by a *subsequent* discovery of the true record boundary by one of the parties." (emphasis added)). But in cases like *Peterson Development*, *Pioneer Home Owners Ass'n*, and this one, where (1) a record parcel that has been assertedly augmented through boundary by acquiescence is divided by an owner with actual knowledge of the discrepancy between the record boundary and the visible line and (2) the description of the claimant's portion of the parent parcel does not include any of the property assertedly gained through boundary by acquiescence, evidence of a separate transfer of the property gained through boundary by acquiescence is required. *See Brown v. Peterson Dev. Co.*, 622 P.2d 1175, 1177–78 (Utah 1980); *Pioneer Home Owners Ass'n*, 2019 UT App 213, ¶¶ 4–5, 36.

¶34 "To defeat summary judgment[,] the non-moving party, who bears the burden of proof at trial, must produce affirmative evidence, beyond mere reliance on the pleadings, showing that there is a genuine issue for trial." *Pioneer Home Owners Ass'n*, 2019 UT App 213, ¶ 30 (cleaned up). BGTS did not produce affirmative evidence that it acquired its predecessor's asserted interest in the Disputed Parcel. Therefore, there was no genuine dispute of material fact on this critical issue, and Balls Brothers is entitled to judgment as a matter of law. Accordingly, the court's grant of summary judgment to Balls Brothers was proper.

CONCLUSION

¶35 The district court applied the law incorrectly when it ruled that Balls Brothers's predecessors' silence did not constitute mutual acquiescence to the Fence Line as the property boundary. The uncontroverted evidence before the court was sufficient to

show that the parties' predecessors in interest mutually acquiesced to the Fence Line as the boundary. However, even assuming that a predecessor in interest to BGTS obtained legal title to the Disputed Parcel through boundary by acquiescence, BGTS has failed to satisfy its burden to demonstrate that it acquired such predecessor's interest in the Disputed Parcel. We therefore affirm the district court's denial of BGTS's motion for summary judgment and its grant of Balls Brothers's motion for summary judgment.

———————